IN RE APPLICATION OF ANDREW RASMUSSEN FOR OLD
AGE ASSISTANCE.
ANDREW RASMUSSEN v. COUNTY OF HENNEPIN
AND OTHERS.[1]

January 19, 1940.

No. 32,306.

[1]Reported in 289 N. W. 773.

*J. A. A. Burnquist,* Attorney General, and *Kent C. van den Berg,* Special Assistant Attorney General, for appellant Walter W. Finke.

*Edward J. Shannon,* Special Assistant County Attorney, for appellants County of Hennepin and County Welfare Board of Hennepin County, as County Agency.

*Andrew N. Johnson* and *Johnson, Sands & Brumfield,* for respondent.

GALLAGHER, CHIEF JUSTICE.

This is an appeal from an order of the district court of Hennepin county reversing an order of the state relief agency which denied old age assistance to one Andrew Rasmussen.

For a long time prior to July, 1930, Rasmussen was a resident of Sartell in Stearns county. On July 3 of that year he made application for admission to "Danebo Home," a private charitable corporation, which, in accordance with its articles, maintained a home for aged Danish men and women, "both such as are without means of self-support, and such as are able and willing to pay for the privilege of a good Christian home." In his application Rasmussen stated that he was the owner of certain described real estate in Stearns and Beltrami counties, which he offered to convey to the home in exchange for maintenance during the remainder of his life. After making an inspection of the property, the board of directors accepted the application and admitted Rasmussen to the institution. The corporation agreed in writing to furnish him "residence and support and medical attendance for the balance of his life and to provide a suitable

burial after his death." The agreement was entered into after it was discovered that the value of Rasmussen's equity in the property which he offered to convey amounted to only $150. This sum was turned over to the home. It further appears that Rasmussen's wife was admitted to the home at the same time without additional consideration.

In October, 1936, Rasmussen made application to the county agency of Hennepin county for old age assistance. In the application he gave the home as his address and, in answer to an inquiry contained therein, disclosed that he had paid to the home $150 for his care and maintenance for life. With this information available, the county agency on December 29, 1936, granted the application and issued its certificate directing payments to applicant in the sum of $28 per month, commencing December 1, 1936. On August 4, 1938, it revoked the certificate effective April 1, 1938, and assigned as a reason therefor that "Danebo Home is to care for recipient as per contract."

Rasmussen appealed to the state agency from the decision of the county agency. After a hearing at which applicant and Martin Nelson, president of the board of directors of "Danebo Home," testified, and the application for admittance to the home and the contract for maintenance made pursuant thereto were received in evidence, the state agency affirmed the decision of the county agency. Rasmussen then appealed to district court, which, after reviewing a transcript of the evidence presented to the state agency and hearing some additional testimony, not materially different from that offered by the same witnesses before the state agency, reversed the decision of that board, finding it to be arbitrary and unreasonable and ordered reinstatement of the payments in accordance with the provisions of the original order.

The appeal to this court presents only one question: Was the action of the state agency in disallowing Rasmussen's application for old age assistance arbitrary or unreasonable as found by the trial court? The old age assistance act, Ex. Sess. L. 1935-1936, c. 95, § 4 (3 Mason Minn. St. 1938 Supp. § 3199-14), places the

administration of the old age assistance system in the respective counties in the county agency (in this instance the Hennepin county welfare board) subject to the supervision of the state agency (state board of control). Provision is made in the law for the appointment of investigators to assist applicants and investigate claims, but decisions and the fixing of amount of old age assistance must be made in the first instance by the county agency. 3 Mason Minn. St. 1938 Supp. § 3199-30, authorizes the modification, suspension, or revocation of any old age assistance certificate under circumstances to which reference will hereinafter be made. 3 Mason Minn. St. 1938 Supp. § 3199-21(a), permits an applicant to appeal from a decision of the county agency to the state agency and also permits the state agency upon its own motion to review any decision made by the county agency. It provides in part:

"The state agency may make such additional investigation as it may deem necessary, and shall make such decision as to the granting of assistance and the amount and nature of assistance to be granted the applicant or recipient as in its opinion is justified and in conformity with the provisions of this act."

Section 3199-21(b) permits an applicant to appeal to the district court of the county in which the application is filed from a decision of the state agency and also permits the county agency to appeal from such decision. That section provides in part:

"The court shall summarily, upon 10 days' written notice, try and determine the said appeal upon the record of the state agency as certified to it and in said determination shall be limited to the issue as to whether the order of the state agency is fraudulent, arbitrary or unreasonable. No new or additional evidence shall be taken on such appeal or introduced by any party to such hearing on appeal in the district court, unless such new or additional evidence, in the opinion of the court, is necessary to a more equitable disposition of the appeal. If the court shall find the order of the state agency fraudulent, arbitrary or unreasonable, the court shall make an order declaring the order

of the State Agency null and void, giving its reasons therefor, and shall order the State Agency to take further action in said matter not inconsistent with the determination of the court."

From the foregoing it may be seen that an appeal from a decision of a county agency to the state agency is heard *de novo*, but in reviewing an order or determination of the state agency the district court, while permitted to hear new or additional evidence, if in the opinion of the court such is necessary to a more equitable disposition of the appeal, may go no further than to find whether the order of the state agency is fraudulent, arbitrary, or unreasonable; and, in the event it so finds, the court is required to give its reasons therefor. Powers of the court on such an appeal are very similar to those on appeal to district court from decisions of town, county, and school boards or other administrative agencies. 1 Dunnell, Minn. Dig. (2 ed. & Supps.) § 397b; Brazil v. County of Sibley, 139 Minn. 458, 166 N. W. 1077; In re Appeal of Sartell, 149 Minn. 233, 183 N. W. 148; State ex rel. Inter-State Iron Co. v. Armson, 166 Minn. 230, 207 N. W. 727; Hughes v. Dept. of Public Safety, 200 Minn. 16, 273 N. W. 618.

One and perhaps the controlling question for determination by the state agency, as well as the county agency, was whether applicant was within the class entitled to the benefits of the act. The county agency, on first consideration, decided that he was. It does not contend on this appeal that it was misled in any way by applicant in reaching that conclusion but frankly takes the position that it erred in concluding that Rasmussen was entitled to the benefits of the act and on its own motion reversed its action by revoking his certificate and discontinuing further payments. Respondent maintains that this did not constitute a legal ground for revocation and calls to his aid that part of 3 Mason Minn. St. 1938 Supp. § 3199-30, pertaining to rehearings which permit the county agency to modify, suspend, or revoke an old age assistance certificate when it appears at any time that "recipient's circumstances have materially changed or that a cer-

tificate was improperly obtained by any recipient, or if the recipient has failed to comply with the provisions of § 26 (§ 3199-36)."
To hold that a certificate issued because of a mistaken interpretation of the old age assistance act was not one improperly obtained would be an overly strict and technical interpretation of the act and one not intended by the legislature.

In determining whether applicant was within the class of those entitled to the benefits of the act, resort must be had to its provisions and particularly to § 3199-11, which reads:

"The care and relief of aged persons who are in need and whose physical or other conditions or disabilities seem to render permanent their inability to provide properly for themselves is hereby declared to be a special matter of state concern and a necessity in promoting public health and welfare. To provide such care and assistance a state wide system of old age assistance is hereby established.";

and to § 3199-15(b), which reads:

"The amount and the manner of payment of old age assistance shall be fixed with due regard to the conditions in each case and shall be an amount which, when added to the net income of the applicant, including subsistence or service reasonably available to him, does not exceed a maximum of $30.00 per month."

The foregoing provision is subject to certain limitations not here material.

3 Mason Minn. St. 1938 Supp. § 3199-18(a), disqualifies a person who is an inmate of and receives gratuitously all of the necessities of life from any public charitable, custodial, or correctional institution maintained by the United States or any state or any political subdivision of the state. It is not contended that "Danebo Home" is a public charitable corporation within the meaning of that section.

It appears from an examination of the evidence presented to the state agency that at all times material herein applicant was receiving subsistence consisting of residence, support, and medi-

cal attendance from the "Danebo Home" under a contract with that institution, which by its terms was to continue during his lifetime and which also provided for his burial after death. There has been no repudiation of the agreement, nor do we find in the testimony anything to indicate that one has been threatened. The institution has lived up to its terms and conditions and does not claim any breach of the contract or disregard of any of the rules of the institution on the part of Rasmussen.

The trial court on this record and on some additional testimony, none of which was inconsistent with that to which we have referred, found the decision of the state agency to be arbitrary and unreasonable. As indicated in his memorandum, the trial judge was of the opinion that the arrangement between the home and applicant was so one-sided and inequitable as to make it inoperative and unenforceable. As things have turned out, the contract proved to be a very one-sided affair. But that does not necessarily mean that it was invalid. In any event, the issue of its validity was not before the county or state agencies. The important question was whether applicant was receiving and was likely to continue to receive from the institution such support as would exclude him from those entitled to pensions under the act. Both Rasmussen and the home had, in the past, lived up to the conditions of the agreement. There was no indication, so far as the record discloses, that the institution did not intend to continue to do so. The ability of the home to care for applicant was not questioned. Consequently we feel that the state agency was, on the record presented to it, justified in deciding that applicant was not a person entitled to benefits under the old age pension act. Its determination was not arbitrary or unreasonable, and we cannot sustain the action of the district court in holding that it was. The decision appealed from is therefore reversed and the action of the state agency is reinstated.

Reversed.