In the Matter of the Application of R. C. VAN MARTER, Commissioner of Public Welfare of Tompkins County Public Welfare District, Petitioner, for a Review of the Determination of DAVID C. ADIE, State Commissioner of Social Welfare, Respondent.

In the Matter of the Application of MARY SOULES for an Allowance of Old Age Assistance.

JESSE B. HANNAN, Director of Monroe County Public Welfare District, an Intervening Party.

Third Department, March 4, 1942.

*Charles H. Newman, County Attorney*, for the petitioner.

*John J. Bennett, Jr., Attorney-General* [*Henry Epstein, Solicitor General; Clarence M. Maloney, Assistant Attorney-General*, of counsel], for the respondent.

*Harry Rosenberg* [*Joseph B. Boyle* of counsel], for the intervening party, Jesse B. Hannan.

*Arthur G. Adams*, for Mary Soules, an intervening party.

FOSTER, J. This is a proceeding to review a determination of the State Commissioner of Social Welfare concerning the application of one Mary Soules for old age assistance. Relief was denied by the commissioner of public welfare for the county of Tompkins on the ground that she is an inmate of the Odd Fellows Home at Ithaca, N. Y., and was, therefore, not without other means or sources of income within the meaning of the Social Welfare Law by which she could be maintained; and also on the ground that a

grant of assistance in her case would constitute a subsidy to a private corporation in violation of section 1 of article 8 of the Constitution of the State of New York. On appeal the State Commissioner of Social Welfare overruled these contentions and determined that the residence of applicant in the Odd Fellows Home does not render her ineligible for old age assistance if she is otherwise qualified. It has been stipulated in this proceeding that she is otherwise qualified, so that on this review the sole issue is whether the fact that she is an inmate of a fraternal home disqualifies her for relief. This presents a question of statutory construction, and perhaps a question of legislative power.

The Social Welfare Law (§ 210) provides in part as follows:

" Old age assistance shall be given to any person who 1. shall have attained the age of sixty-five years;

" 2. is unable to support himself, either in whole or in part, has no children or other person able to support him and responsible under the provisions of this chapter for his support, and is without other means or sources of income by which he can be maintained. * * *

" 6. is not an inmate of any public home or any public or private institution of a custodial, correctional or curative character, except in the case of temporary medical or surgical care given in a hospital or sanitarium to a person already receiving old age assistance * * *."

Section 211 of the same law provides in part:

" 1. It shall be the duty of public welfare officials to provide adequately for those eligible for old age assistance. * * *

" 4. Assistance shall be provided only for the recipient in his own or some other suitable family home, *or a private home for the aged*, except that temporary care in a hospital or sanitarium may be provided with the approval of the department." (Italics mine.)

Obviously the applicant is not an inmate of any public home, or any public or private institution of a custodial, correctional or curative character, and hence she does not fall within the ban of subdivision 6 of section 210. Quite to the contrary, she is an inmate of a private home for the aged, for it is clear that the Odd Fellows Home must be so classified, and this statute expressly states that assistance may be provided for a recipient in such a home. Does the mere fact alone that applicant is an inmate of a private home for the aged require a determination as a matter of law that she is not one of those who are without other means or sources of income by which they can be maintained? I do not think so. If her residence at the home is merely by sufferance, and not as a matter

of contractual right, it cannot logically be said that she herself has any means or sources of support. Under such circumstances the means or sources of the home are not hers to command; she may implore their benefit only. In such case she is a needy person within the contemplation of the statute even though she may be temporarily receiving aid from a private source. It would be otherwise, of course, if there exists an enforcible obligation against the order with which she is affiliated to care for her.

An examination of the rules of the order which govern admission to the home reveals no such obligation. A committee of her lodge may or may not find an applicant for admission worthy and eligible. If the committee acts favorably, then at a subsequent meeting of the lodge if a majority of the qualified members vote in the affirmative a request for admission may be made. Examinations are again required and then the committee on admissions to the institution may investigate the applicant and report to the board of trustees, who may or may not admit the applicant. There are other requirements and other formalities but these are sufficient to indicate that an applicant can demand nothing as a matter of right and that there is no obligation for support enforcible against the order merely because the applicant happens to be a member in good standing. Aside from this, the record shows that when the present applicant was admitted to the home she was then receiving relief from another district and her admission was upon the understanding that she would continue to receive relief and apply it in part to the cost of her care. She applied for relief to Tompkins county because there the home is located, and if relief was granted Tompkins county would be reimbursed by the district from whence she came. It does not appear that her residence at the home is the result, directly or indirectly, of an assignment by her of any property to the home. In fact there is not the slightest basis for a finding that any contractual right for support exists in her favor and against the home.

It is conceded that if she was outside the home she would be entitled to relief, and under the statute already quoted she could then be sent to the home, providing those in charge would take her, and there receive such relief. It is argued, however, that the reversal of this process precludes relief, chiefly upon the ground that if she is already in the home any assistance granted would constitute a gift in aid of a private corporation and in violation of section 1 of article 8 of the State Constitution. Such an argument ignores the fact that grants of assistance are made to individuals and whenever practicable are required to be in the form of cash or a check (Old Age Assistance Information Bulletin No. SS-3, July

2, 1937, § 2, ¶ 3; Social Welfare Law, § 211, subd. 3). Moreover, the determination under review directs that if assistance is allowed the grant is to be made to the applicant and not to the home. Payments made in this manner could in no way violate the constitutional restrictions against the aid to a private corporation. Of course the money allowed for support must be expended somewhere and the Legislature has said explicitly that it may be spent in a private home for the aged. Whether this is a wise or prudent policy is not for us to determine, but certainly it does not mark the statute as unconstitutional. It is hinted darkly that dire consequences may follow if the determination of the State Commissioner is confirmed. If so, these consequences are matters for the Legislature to consider for they flow from acts that are legislative in character and not judicial. It is not our function to restrict largesse for the aged as fixed by statute unless the statute is clearly unconstitutional and this infirmity does not appear. The determination of the State Commissioner of Welfare is justified on the law and the facts, and is binding on the commissioner of public welfare of Tompkins county. (Social Welfare Law, § 213, subd. 3.)

The determination should be confirmed, without costs.

HILL, P. J., CRAPSER and SCHENCK, JJ., concur; BLISS, J., dissents, with an opinion.

BLISS, J. (dissenting). The question here is whether or not Mary Soules is a person without means or a source of income by which she can be maintained. (Social Welfare Law, § 210, subd. 2.) Judge FOSTER interprets this portion of the law to mean that she must have some contractual right of maintenance to such income which she could enforce at law. I do not so read the statute.

In the first place the statute itself contains no language to that effect. It says nothing about contractual rights and nothing from which the need of such rights might be inferred. It is plain, simple and direct. It speaks only of " other means or sources of income." I take this to mean that a person who is actually receiving her support from some other source is not entitled to old age assistance. Many an indigent old person has been supported through the kindness of another who was not legally liable for such support, such as a friend, distant relative or even a charitable institution and it was never thought that so long as such support continued, the recipient was also entitled to support at the hands of the public. Both beneficiary and donor alike would have been shocked at such an intimation. The very thought is repugnant to our conception of the practice of private charity. One of the principal motives for the maintenance of many charitable institutions such as this

Odd Fellows home in which Mary Soules is now an inmate is that the indigent aged may not become public charges. In the absence of a clear legislative mandate we should not so construe this statute as to abolish this incentive to private charity. As long as Mary Soules is not in need and actually receives her support from the Odd Fellows or any other souj ce, it cannot be said that she is without a source of income. This is the clear language of the statute. Because subdivision 4 of section 211 of the Social Welfare Law authorizes the furnishing of public old age assistance in a private home for the aged has no bearing upon our present question. That provision merely permits a welfare officer to furnish such public old age assistance in a private home to those who are under the statute entitled thereto. It does not enlarge the number of those entitled to such assistance. It only regulates the method of furnishing such relief. Nor is it important so far as this case is concerned, that Mary Soules agreed or the home imposed as a condition of her admission, that she should continue to receive relief by public old age assistance after her admission to the Odd Fellows Home and apply it toward her care. Surely neither she nor the home was authorized to make any such agreement binding upon the public welfare authorities of Tompkins county and these authorities made no such agreement. If some other properly authorized welfare official made such agreement it cannot be enforced in this proceeding against the county of Tompkins welfare district.

The determination of the State Commissioner of Social Welfare should be annulled, with fifty dollars costs.

Determination confirmed, without costs.