(No. 43195.—

ILLINOIS BELL TELEPHONE COMPANY, Appellant, *vs.* PAUL POWELL, Secretary of State, *et al.,* Appellees.

*Opinion filed May 21, 1971.*

ALAN N. BAKER, of Chicago, (DONALD H. SHARP and ROBERT V. R. DALENBERT, of counsel,) for appellant.

WILLIAM J. SCOTT, Attorney General, of Chicago, (FRANCIS T. CROWE and HERMAN R. TAVINS, Assistant Attorneys General,) for appellees.

Mr. CHIEF JUSTICE UNDERWOOD delivered the opinion of the court:

The plaintiff, Illinois Bell Telephone Company, appeals directly to this court pursuant to our Rule 302(a)(1) (43 Ill.2d R. 302(a)(1)) from a judgment of the circuit court of Cook County denying recovery by plaintiff of $37,464.96 in "additional" franchise taxes and penalties allegedly due under the terms of sections 131 through 133 of the Business

Corporation Act (Ill. Rev. Stat. 1967, ch. 32, pars. 157.131 through 157.133) and paid into a protest fund as provided for in an Act for payment of public money into the State Treasury. (Ill. Rev. Stat. 1967, ch. 127, par. 172.) Sections 131 through 133 of the Business Corporation Act, as amended in 1967, establish four categories of franchise taxes imposed on domestic corporations for the privilege of exercising franchises in this State.

An "initial" francise tax, payable at the time of filing the first report of issuance of shares, is computed at the rate of $\frac{1}{12}$ of $\frac{1}{10}$ of 1% for each calendar month, or fraction thereof, between the date of issuance of the certificate of incorporation and July 1 of the next succeeding calendar year. The amount of the initial tax may not be less than $100 nor more than $1,000,000 per annum.

An "annual" franchise tax and a "supplemental annual" franchise tax, both payable during July of each year, are each computed at the rate of $\frac{1}{20}$ of 1% for the 12-month period commencing on July 1 of the year in which such tax is payable. The basis for the annual and supplemental annual tax is the amount represented in this State of the sum of its stated capital and paid-in suplus on December 31 of the preceding calendar year minus reductions in this sum prior to June 25 of the current calendar year. The combined amount of the annual and supplemental annual tax may not be less than $100 nor more than $1,000,000 per annum.

An "additional" francise tax is computed at the rate of $\frac{1}{12}$ of $\frac{1}{10}$ of 1% for each month, or fraction thereof, between the date of each respective increase in the sum of stated capital and paid in surplus and July 1 of the next succeeding calendar year. The additional tax is payable at the time the sum of stated capital and paid-in surplus is increased and there are no minimum or maximum limits in the statute on the total amounts to be paid in additional taxes.

In July, 1968, plaintiff paid $956,562.41 in annual and supplemental annual franchise taxes for the year commenc-

ing July 1, 1968. In August, 1968, plaintiff reported increases in its stated capital through the sale of stock in June, 1968, and was thereby required to pay additional franchise taxes for the period June 1, 1968, through June 30, 1969. The amount of this additional franchise tax attributable to the year commencing July 1, 1968, was $79,625.04.

Of this amount, plaintiff tendered $43,437.59 which, in combination with the annual and supplemental annual franchise taxes, would have brought the total franchise taxes paid for the year to $1,000,000. The Secretary of State demanded the balance of $36,187.45 in additional franchise tax and $1,277.51 in penalties. Plaintiff paid the sum of $37,464.96 "under protest" and, pursuant to section 2a of the Act for the payment of public money into the State Treasury (Ill. Rev. Stat. 1967, ch. 127, par. 172), brought suit to enjoin the payment of this "protest fund" by the Secretary of State to the State Treasurer and to recover the $37,464.96.

The sole question presented in this case is the proper construction of a 1967 amendment to section 133 of the Business Corporation Act which provides that, "in no event shall the combined amount of the annual franchise tax and the supplemental annual franchise tax be less than $100 nor more than $1,000,000 per annum". Ill. Rev. Stat. 1967, ch. 32, par. 157.133.

Plaintiff contends that the additional franchise tax was intended to be included as a component of "the annual franchise tax" as that phrase is used in the above quoted amendment and thus subject to the $1,000,000 tax ceiling. This interpretation rests upon the theory that the additional tax is designed to "close loopholes" in the annual and supplemental annual taxes so that, for example, an increase in capital after December 31, 1968, would not escape taxation until July, 1970. As previously noted, the additional franchise tax is paid by a corporation at the time it increases its capital, and is computed at the monthly rate of $\frac{1}{12}$ of .10%

(an annual rate of .10%) for each month from the time of the increase to July 1 of the following year. Thereafter the annual and supplemental annual taxes are computed and payable using the increased basis and a combined annual rate of .10%, for the next 12-month period. Plaintiff points out that the effect of this arrangement is the same as if the basis of the annual and supplemental annual taxes had been immediately increased to reflect the increase in capital and contends that the legislature could not have rationally intended to permit unlimited additional taxes on capital increases up to July 1 and thereafter apply the $1,000,000 limit to equivalent taxes payable under another name. Plaintiff concludes that, in enacting a limit upon "the annual franchise tax", the legislature "meant that phrase to include all the categories of time-based franchise taxes, including the so-called 'additional' tax."

It is a primary rule of statutory construction that the intention of the legislature should be sought principally from the language used in the Statute. (*People ex rel. Mayfield* v. *City of Springfield,* 16 Ill.2d 609; *Western Nat. Bank of Cicero* v. *Village of Kildeer,* 19 Ill.2d 342.) The statute contains no express maximum and minimum limits on the amount of additional franchise tax payable per year although such limits are established with regard to the initial franchise tax and the combined amount of annual and supplemental annual franchise tax. If, as plaintiff urges, the legislature had intended additional franchise taxes to be subject to the limitations on "the combined amount of the annual franchise tax and the supplemental annual franchise tax," it could have easily done so. Plaintiff contends *arguendo* that if a literal construction of the statute excludes the additional tax from the $1,000,000 limitation we should nonetheless disregard the statutory language since to follow it would produce irrational results. We do not agree.

Plaintiff views the additional franchise tax as a "time-

based tax", *i.e.*, a tax upon doing business over a period of time rather than a tax upon an event or the exercise of a privilege. This is not, as plaintiff contends, the only logical interpretation of the additional franchise tax nor even the most logical interpretation. The fact that the additional franchise tax is computed at a rate per month which, if paid for 12 months, would equal the per annum rate of the annual franchise tax does not establish it as an annual tax. The additional franchise tax is payable at the time a corporation issues additional shares or otherwise increases its stated capital or paid-in surplus. It is entirely logical to assume that the legislature intended to tax these affirmative corporate acts without regard to the minimum and maximum per annum limits on taxes imposed for other purposes. Viewing the additional franchise tax as a tax upon an event or the exercise of a privilege is consistent with a literal interpretation of the statutory language and adequately explains those results which plaintiff alleges are irrational. At least equally illogical, it seems to us, would be the result of the interpretation which plaintiff seeks, for that interpretation, applied to a corporation whose annual and supplemental franchise taxes equaled or exceeded $1,000,000, would entirely eliminate any additional tax in the event of an increase in capital or paid-in surplus. We accordingly find the legislative intent to be clearly expressed in the statutory language and perceive no reason to deviate from a literal enforcement of the statute.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*