Grace Reynolds *et al.,* Plaintiffs-Appellants, *v.* The State of Illinois, Department of Public Aid, *et al.,* Defendants-Appellees.

(No. 59498;

First District (3rd Division)—March 6, 1975.

Haffner, Grow, Overgaard, & Berghoff, of Chicago (Brimson Grow, of counsel), for appellants.

William J. Scott, Attorney General, of Chicago (John D. Whitenack, Assistant Attorney General, of counsel), for appellee Illinois Dept. of Public Aid.

Bernard Carey, State's Attorney, of Chicago (Sheldon Gardner, Paul P. Biebel, Jr., and Catherine M. Ryan, Assistant State's Attorneys, of counsel), for appellee Cook County Dept. of Public Aid.

Mr. JUSTICE MEJDA delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Cook County affirming the decision of the Illinois Department of Public Aid denying plaintiffs' applications for public aid. Separate petitions for administrative review were filed by plaintiffs in the circuit court, and the cases were consolidated for hearing. Plaintiffs appeal from the judgment affirming the decision of the State department.

Plaintiffs are four residents of the Baptist Retirement Home (hereinafter Home) in Maywood, Illinois. Alva Barker (born December 5, 1892) made application for admission to the Home on November 1, 1963, and entered the Home on April 8, 1965; Margaret Clink (born February 28, 1887) made application on November 3, 1967, and entered the Home on February 27, 1968; Grace Bentley (born October 16, 1878) made application on October 13, 1969, and entered on June 29, 1971; Grace Reynolds (born September 12, 1890) made application on January 20, 1969, and entered the Home on July 1, 1969. Defendants are Edward T. Weaver, Director of the Illinois Department of Public Aid, and David L. Daniel, Director of the Cook County Department of Public Aid.

Preliminary to acceptance, plaintiffs submitted signed applications for admission to the Home on printed forms, each of which contained a certificate of admission of the Board of Directors of the Home executed by its president and secretary. No duties or obligations of the Home were set forth therein. The applications of Barker, Clink and Bentley contained assignments to the Home of all present and future assets. The Reynolds application did not contain such an assignment, but all of her assets were in fact turned over to the Home, and after her admission all Social Security payments were assigned. None of the applications specifically referred to the assignment of old-age-assistance benefits. Each included the question, "Do you receive State old age assistance?" which

Reynolds and Bentley answered affirmatively and Barker and Clink in the negative. The Reynolds application followed with the question, "If eligible, will you apply on request of the Home and cooperate with the Home to obtain such assistance?" and the others asked instead, "If eligible, are you willing to apply?" Each answered "Yes."

During the month of October 1972, prior to filing application for old-age assistance with the State of Illinois, each of the plaintiffs, at the request of the Home, signed "Residents' Agreements" with the Home which purported to set forth the rights, obligations and duties of the parties. Paragraph 7 provides, *inter alia*, that upon exhaustion of the assets transferred, the resident will apply for old-age-assistance benefits and further, that in the absence of receipt of such payments, when all other assets have been exhausted, the Home reserves the right to remove the resident.

Subsequently the Home, on behalf of Barker, Bentley, Reynolds and Clink, submitted applications for old-age assistance total-care payments to the Cook County Department of Public Aid. In an accompanying letter the executive director of the Home stated, "The above applicants do not pay a set fee. They have limited funds and surrender everything when they come in." In supplemental forms the Home stated that each applicant had contracted for life care, and attached copies of the respective residents' agreements of October 1972, with each original application for admission. The Reynolds application for assistance was denied for the stated reason that she was presently under a contract for life care with the Home. The Barker, Bentley and Clink applications were also denied, but for the stated reason that sufficient information was not furnished upon which to determine eligibility. In each case an appeal was taken from the decision of the Cook County Department of Public Aid.

During the hearings on appeal before the State Department of Public Aid, an employee of the Home testified as to the assets each applicant brought to the Home upon admission, the value of subsequent benefits received by the Home (such as the assignment of Social Security benefits, proceeds of sale of real estate and personalty, and Barker's pension payments), and in each case the excess cost of care over the value of the total assets received by the Home. The cost of care was based on the cash stipends received by each resident from the Home, together with the average per resident of the total costs of operating the Home. The Home took the position that each applicant was obliged, both by the terms of the original application and the subsequently executed residents' agreements, to apply for old-age assistance upon the exhaustion of the assets by the Home. It was there argued, as it is before this court, that the

applicants are therefore entitled to old-age-assistance benefits in accordance with the provisions of section 3—1.5 of the Illinois Public Aid Code (Ill. Rev. Stat. 1971, ch. 23, par. 3—1.5), which are:

"Residents of Private Institutions.) Persons who are residents of or who are being maintained by a private institution may qualify only if they have not purchased care and maintenance in the institution by cash or by transfer of property, or having purchased care and maintenance, only after the amount of the cash or property has been wholly consumed for care and maintenance."

Contrary to the County Department's request, no documentation was ever presented to verify the expenditures on behalf of the applicants or otherwise show that the assets transferred had been wholly exhausted or consumed for care and maintenance. An undated brochure of the Home was introduced into evidence to show the general policy with respect to the Home's residents.

After hearings had in each plaintiff's case, the decisions of the Director of the Department of Public Aid of the State of Illinois provided that each applicant was ineligible for public aid because she contracted for life care when she entered the Home, and such assets can neither be wholly consumed nor altered by subsequent agreements. The decisions further provided that since the Home limited its responsibility to the applicants through the October 1972 residents' agreements, the subsequent agreement cannot be recognized because it constitutes a revision or abrogation of an earlier contract.

Although each notice of decision filed by the County Department stated that the "application for Medical Assistance which was filed" was denied for the reasons above stated, we note that the original applications for assistance filed by plaintiffs stated that they applied for and sought total care assistance and not merely medical assistance payments. Section 5—2 of the Illinois Public Aid Code (Ill. Rev. Stat. 1971, ch. 23, par. 5—2) provides a different standard of eligibility to obtain medical assistance only. Therefore, since the applications were originally filed for general old-age-assistance benefits and the parties had limited argument to plaintiffs' eligibility thereto, we do not reach the issues of whether or not the plaintiffs are entitled to medical assistance payments.

## I.

Plaintiffs' first contention on appeal is that they are not precluded from receiving old-age assistance and are eligible for such benefits under section 3—1.5 of the Illinois Public Aid Code. They maintain that since the amount of cash or property transfered to the Home has been wholly consumed for care and maintenance, they are entitled to public aid "re-

gardless of whether the institution might have a continuing contractual obligation to furnish care thereafter." It is further contended that the regulations adopted by the Illinois Department of Public Aid (Illinois Department of Public Aid Categorical Assistance Manual, Chapter 550, Topics 554.3 and 555.1) unlawfully restrict the scope of section 3—1.5 of the Code and are therefore invalid and not applicable.

■■ A primary rule of statutory construction is that the court must look to the very words of the statute to ascertain the legislative intent. (*Ill. Bell. Telephone Co. v. Powell* (1971) 48 Ill.2d 375, 270 N.E.2d 25.) An administrative agency has authority and responsibility to regulate the execution of a statute (*Hill v. Relyea* (1966), 34 Ill.2d 552, 216 N.E.2d 795), but the statute which is being administered may not be altered or added to by the exercise of a power to make regulations thereunder. (*Ruby Chevrolet, Inc. v. Department of Revenue* (1955), 6 Ill.2d 147, 126 N.E.2d 617; 1 I.L.P. *Adm. Law & Procedure* § 24 (1953).)

The Illinois Public Aid Code (Ill. Rev. Stat. 1971, ch. 23, par. 1—1 *et seq.*) provides in section 1—5 that "[t]he provisions of this Code shall be liberally construed to effect its objects and purposes." The purpose of the Code is stated in section 1—1 as follows:

> "The purpose of this Code is to assist in the alleviation and prevention of poverty and thereby to protect and promote the health and welfare of all the people of this State.
>
> To accomplish this purpose, this Code authorizes financial aid and social welfare services for persons *in need* thereof by reason of unemployment, illness, or other cause depriving them of the means of a livelihood compatible with health and well-being, and provides for the development, use and coordination of all resources in this State, governmental and private." (Emphasis supplied.)

■■■ Clearly, the purpose of the statute is to provide assistance where need exists. The legislature has provided the general rule that where one has purchased care and maintenance he is not entitled to old-age assistance. In other words, when an applicant has sufficient assets to care for himself or possesses the right to demand or is entitled to care and maintenance, he is not "in need" within the provisions of the statute (see Ill. Rev. Stat. 1971, ch. 23, par. 3—1.2). Our supreme court has held that the gratuitous furnishing of care and maintenance does not negate the existent need nor preclude entitlement to assistance under the Code. (*People ex rel. Freeman v. Department of Public Welfare* (1938), 368 Ill. 505, 14 N.E.2d 642.) Consistent with this view, in *Application of Van Marter* (1942), 33 N.Y.S.2d 677, 263 App. Div. 498, it was held that the applicant for public aid, an inmate of a private fraternal

home, was entitled to financial assistance even though temporarily receiving aid from the private charitable institution where there was no assignment of property and no contractual right for support against the Home.

Topic 555.1 of the regulations generally provides that an applicant is not in financial need and not eligible for assistance if he has a life care contract with the Home; that any such agreements or contracts between a Home and a resident constitute a tangible asset; and that the Commission does not recognize a revision in or abrogation of an original contract. Topic 554.3 generally describes life-care contracts. It is again stated that where the Home obligates itself to provide care and maintenance for life, the resident cannot be considered eligible for public assistance since he is not in financial need. Admitting the difficulty in recognizing a life-care contract, Topic 554.3 provides a guideline to aid in distinguishing life-care contracts from other contracts for care and maintenance by concluding:

> "* * * A feature which obviously distinguishes a contract which does *not* provide for life care is a statement that the applicant for admission to the home agrees to pay at a monthly rate for his care, or agrees that after the value of the assets he turns over to the home has been exhausted, he will apply for public assistance."

In challenging the validity of the departmental regulations, plaintiffs place great reliance on *People ex rel. Freeman v. Department of Public Welfare, supra.* There, prior to her admission to the I.O.O.F. Old Folks' Home at Mattoon, a private charitable institution, petitioner was receiving old-age assistance from the State of Illinois which was discontinued for the sole reason that she had become a member of the Home. The court noted (368 Ill. 505, 508, 509):

> "She is an inmate of, and is being maintained by, a private institution. It is conceded that *she has not purchased care and maintenance* either by cash or transfer of property in the institution in which she now resides. The statute expressly proclaims that under such circumstances a person is eligible for relief under its beneficent provisions. The authority and discretion granted to the department do not extend to complete denial of assistance *merely because an applicant, otherwise eligible,* becomes an inmate of a private institution. * * *
>
> "* * * [T]he persons last described [inmates of private institutions] are specifically designated as potential recipients of assistance, provided, of course, they can satisfy the other requirements of the law. Further manifestation of the legislative intent is

the provision that a person who has purchased care and maintenance either by cash or transfer of property to a private institution in which he is an inmate shall be eligible for assistance under the act when and after the amount of cash or property for his care and maintenance has been exhausted." (Emphasis supplied.) However, the court there held that the predecessor of what is now section 3—1.5 of the Code did not deny eligibility for old-age assistance as the applicant had not purchased care and maintenance, unlike the case before us. Here, plaintiffs have purchased care and maintenance and under the statute are not eligible for assistance unless the amount of cash or property transferred has been exhausted for their care and maintenance.

■■■ In the instant case the statute provides that one of the obstacles to the applicants' eligibility for assistance, namely, the transfer of cash or property for care and maintenance, may be removed after the amount paid has been exhausted for care and maintenance. In some instances where one pays for care and maintenance the cost may be properly allocable to the amount of care and maintenance purchased, either in terms of the nature and quantity of the goods and services, or the period of time during which the care and maintenance is furnished. Here, however, no such allocation can be made until the recipient has died. The contract or agreement is for life, and the assets, although they may be actually considered as consumed by the Home by its costs prior to death, are properly allocable from the date or transfer over the entire remaining span of the recipient's lifetime. The contract is a gamble of sorts. The Home or other institution furnishing the care under a nonallocable life care contract may lose or gain financially, depending upon such factors as its cost for the care furnished, the value of the assets transferred, and the life span of the recipient. Under such agreement the recipient may likewise benefit or sustain a financial loss, depending upon many of the same factors. Nonetheless, the recipient's right to demand or entitlement to care and maintenance from the Home is prima facie evidence of lack of need. In light of the stated purpose of the Illinois Public Aid Code, an unqualified life-care contract or agreement which entitles the aged person to continued care and maintenance, even after the value of the assets transferred may have been exhausted, does not come within the exception of section 3—1.5 of the Code. It would be contrary to the above purpose to allow plaintiffs such public assistance "* * * in meeting basic maintenance requirements for a livelihood compatible with health and well-being * * *" (Ill. Rev. Stat. 1971, ch. 23, par. 3—1) when they are prima facie in receipt of such care and maintenance. Topics 554.3 and 555.1 constitutes a proper and valid exercise of authority by

the Department of Public Aid to regulate the execution of the statute consistent with its intent and purpose.

Here there has been no repudiation of the agreements. The Home has provided this care and maintenance to the plaintiffs for a number of years after the value of the assets transferred has been exhausted. There has been no threat of ousting the plaintiffs, other than the argument that because the Home is losing money it may not be able to care for them some time in the future. The argument that if assistance is denied the Home may be compelled to deny its obligation to care for plaintiffs during the remainder of their lives is purely speculative. The actual enforcement of the agreements between plaintiffs and the Home is not before us. No breach of the original agreements has been alleged nor proven.

The record amply supports the finding and determination that the cash and property have not been wholly consumed for care and maintenance and that plaintiffs are therefore not entitled to general assistance thereunder. See *Application of Rasmussen* (1940), 207 Minn. 28, 289 N.W. 773, 776, 777.

## II.

■■ Plaintiffs' second contention is that since the applications for admission to the Home provided that plaintiffs would apply for public assistance, the Home's obligation to furnish life care was contingent upon the receipt of such public assistance. In their reply brief filed in this court plaintiffs have conceded that the residents' agreements subsequently executed in October of 1972 were nullified by the applicable provisions of the Categorical Assistance Manual. Therefore, we must look to the provisions of the original applications for admission of the plaintiffs which were executed prior to their admission to the Home.

Plaintiffs submit that the consideration received by the Home from plaintiffs pursuant to the applications for admission consisted of (1) the then available assets and (2) the right to future assets. It is argued that the future assets include—and that the obligation of the Home to provide continued care is contingent upon—the receipt of public assistance. The applications do not specifically so provide, nor is any evidence of such condition or intention contained in the Home's bylaws or regulations. The only reference to public assistance appears in the questions and answers previously quoted from the applications.

The pertinent question as to willingness to apply for public assistance in each application commences with the words "if eligible." Assuming *arguendo* that the question and affirmative answers impose an obligation on plaintiffs to apply upon request and to cooperate with the Home in

making such application, plaintiffs are in full compliance by virtue of the proceedings brought here through the Home.

The words "if eligible" contained in each application for admission evidence of themselves a clear understanding by the Home that plaintiffs may possibly not qualify and that public assistance may not in fact be available. The Home was fully aware that plaintiffs were transferring all of their present and future assets and are therefore without further means to guarantee such assistance or to provide any other consideration. The Home, nonetheless, did not expressly limit or condition its obligations to the plaintiffs in any manner. The undated brochure received in evidence expressly provided that upon acceptance into membership in the Home, regardless of the amount of assets, every need is cared for, including room, food, nursing and hospital care, dental care, hairdresser, security, monthly allowances for incidentals, and "even burial expense" assumed by the Home. The brochure further states:

"The guiding principle is this: When you enter the Home, you turn over all of your assets (including property, stocks and bonds, insurance policies, social security, etc.). In return, the Home guarantees that you will be cared for throughout your lifetime. This plan creates for you total security."

The record is devoid of any condition or contingency. Plaintiffs were accepted as members of the Home pursuant to their applications by formal action of the Home acting through its Board of Directors which was absolute and contained no qualifications of any kind. No agreement or intention has been shown to support the allegation that the obligation of the Home was contingent upon receipt of public assistance.

## III.

The evidence substantially supports the findings and determination that plaintiffs purchased life care and maintenance in the Home, a private institution, by cash or transfer of property which has not been wholly consumed for such care and maintenance; that the obligation of the Home is not contingent; and that therefore, plaintiffs are not entitled to general old-age assistance under the Illinois Public Aid Code. The same is not contrary to the manifest weight of the evidence (*Kelley v. Civil Service Com.* (1961), 31 Ill.App.2d 115, 175 N.E.2d 630), and accordingly, the judgment of the circuit court affirming the decision of the Director of the State Department of Public Aid is affirmed.

Affirmed.

DEMPSEY and McNAMARA, JJ., concur.