COOK COUNTY POLICE AND CORRECTIONS MERIT BOARD, Plaintiff-Appellee, *v.* ILLINOIS FAIR EMPLOYMENT PRACTICES COMMISSION *et al.*, Defendants-Appellants.

First District (2nd Division)   Nos. 62512, 62633 cons.

Opinion filed April 4, 1978.

William J. Scott, Attorney General, of Chicago (John D. Whitenack, Assistant Attorney General, of counsel), for appellant Illinois Fair Employment Practices Commission.

Bernard Carey, State's Attorney, of Chicago (Paul P. Biebel, Jr., and Nancy Krajec, Assistant State's Attorneys, of counsel), for appellee.

Mr. JUSTICE PERLIN delivered the opinion of the court:

Defendants appeal from a decision of the circuit court of Cook County reversing an order and decision of the Illinois Fair Employment Practices Commission. The Commission had found that the Cook County Police and Corrections Merit Board committed an unfair employment practice by rejecting defendant, Dale Wingate, for employment because of his "unsatisfactory arrest record." The circuit court determined that Wingate was properly rejected.

The issue on appeal is whether defendant was wrongfully rejected in violation of the Fair Employment Practices Act. Ill. Rev. Stat. 1975, ch. 48, par. 853.

Dale Wingate submitted an application to the Cook County Police and Corrections Merit Board (hereinafter Merit Board) for a position as corrections officer or patrolman. The application was a printed form furnished by the Merit Board and inquired, *inter alia*:

"Were you ever arrested, detained for investigation or taken into custody in this state or elsewhere in connection with any criminal action? * * * If yes, provide the following information: (Date of incident; Charge; Location, City-State; and Court Disposition.)"

Wingate answered affirmatively and stated that he had been arrested on four occasions and had been charged with five offenses, three of which were dismissed. He had been convicted of resisting arrest and of public drunkenness and was required to pay a fine in each case. The Merit Board replied to the application in a letter stating:

"The Merit Board has found it necessary to reject your application for the reasons checked below:

* * *

X 6, Unsatisfactory arrest record."

Thereafter Wingate filed a charge with the Illinois Fair Employment Practices Commission (hereinafter the Commission) alleging that the rejection by the Merit Board was discriminatory insofar as he was never arrested or convicted of a felony. A complaint was issued and a public hearing was held.

At the hearing, Wingate testified that he applied for a position as corrections officer and was rejected due to his arrest record, that subsequent to the arrests in question he had served in the military and

received an honorable discharge, and he had completed his education and received a degree in history. An investigator for the FEPC testified in regard to the procedure taken after Wingate filed his charge. An administrator for the Merit Board testified that Wingate applied for a position as patrolman, not corrections officer, and that the three-member board made the decision to reject him. He stated that the decision included a consideration of all the information supplied by Wingate, including the two convictions.

The hearing examiner filed a recommended order and decision. Subsequently the Commission followed the examiner's recommendation and entered an order and decision for Wingate. The Commission found that the Merit Board's application form and its policy of summarily rejecting applicants who have been arrested constitutes a violation of section 3 of the Fair Employment Practices Act. (Ill. Rev. Stat. 1975, ch. 48, par. 853.) The Commission stated that the decision would be the same whether Wingate was applying for a position as patrolman or corrections officer. The Commission ordered, *inter alia,* that the Merit Board cease from inquiring on any of its written job applications whether an applicant has ever been arrested, that they cease from refusing to certify applicants as eligible for appointment because such applicants have ever been arrested for and/or convicted of criminal offenses, without giving full consideration in each case to all other factors bearing on the individual's fitness for such an appointment, and that the Merit Board permit Wingate to reapply for a position as corrections officer or patrolman.

Upon a complaint filed by the Merit Board for administrative review, a hearing was held and the trial court reversed the Commission's order. The Illinois Fair Employment Practices Commission and Wingate appeal from the trial court order.

■■■ Section 3 of the Illinois Fair Employment Practices Act (Ill. Rev. Stat. 1975, ch. 48, par. 853) states that:

"It is an unfair employment practice:
* * *

(e) For any employer, employment agency or labor organization to inquire on a written application whether a job applicant has ever been arrested."

The Merit Board is an employer under the Act (Ill. Rev. Stat. 1975, ch. 48, par. 852(d)) and is subject to section 3(e). The Merit Board is also subject to the county police department act (Ill. Rev. Stat. 1973, ch. 125, par. 51 *et seq.*) and must comply with section 8 of that act which sets forth the qualifications for a position with the county police department. (Ill. Rev. Stat. 1973, ch. 125, par. 58.) Section 8 states:

"[A]ll persons * * * shall be not more than the maximum age limit fixed by the Board from time to time, be of sound mind and body,

be of good moral character, be citizens of the United States, *have no criminal record*, possess such prerequisites of training, education and experience as the Board may from time to time prescribe, and shall be required to pass successfully mental, physical, psychiatric and other tests and examinations as may be prescribed by the Board." (Emphasis added.) (Ill. Rev. Stat. 1973, ch. 125, par. 58.)

Where two statutes are applicable, they must be read together and if inconsistent, the specific provision prevails over the provision designed to apply to cases generally. (*Ralston Purina Co. v. Killam* (5th Dist. 1973), 10 Ill. App. 3d 397, 293 N.E.2d 750; *In re Estate of Gubala* (1st Dist. 1967), 81 Ill. App. 2d 378, 225 N.E.2d 646.) On the specific issue of the use of arrest records, the statutes are not inconsistent. Section 3(e) specifically forbids inquiry of an arrest record on an employment application. Section 8 is silent on the issue but states that an applicant may be refused on the basis of a criminal conviction. Section 8 does not authorize the Merit Board to inquire about arrests. Thus, the statutes are not inconsistent, and the Merit Board must comply with the prohibition of section 3(e).

The Merit Board contends that it is exempted from section 3(e) because section 3 expressly allows inquiry into a "bona fide occupational qualification" (Ill. Rev. Stat. 1975, ch. 48, par. 853), and respect for the law as evidenced by one's arrest and conviction record is a bona fide qualification for either corrections officer or patrolman. However, a primary rule of statutory construction is that the court must look to the very words of the statute to ascertain the legislative intent. (*Illinois Bell Telephone Co. v. Powell* (1971), 48 Ill. 2d 375, 270 N.E.2d 25.) Section 8 does not require as a qualification that an applicant have no arrests, it only requires no convictions. If a consideration of arrests is necessary, it is for the legislature to mandate. The court will not read something into a statute which has not been included by the legislature.

There are no Illinois cases interpreting the clause "bona fide occupational qualification." In the absence of Illinois cases, Federal decisions on similar issues, while not controlling, are relevant and helpful precedents. (*City of Cairo v. Fair Employment Practices Com.* (5th Dist. 1974), 21 Ill. App. 3d 358, 315 N.E.2d 344.) The Federal Equal Opportunities Act contains a provision that where there is a "bona fide occupational qualification," employers may discriminate on the basis of sex. (42 U.S.C. §2000e—2e (1970) (section 703(e) of Title VII).) The United States Supreme Court has held that in order to rely on the "bona fide occupational qualification" exception, [an employer has the burden of] proving " 'that he had reasonable cause to believe, that is, a factual basis for believing, that all or substantially all women would be unable to perform safely and efficiently the duties of the job involved.' " (*Dothard*

*v. Rawlinson* (1977), 433 U.S. 321, 333, 53 L. Ed. 2d 786, 800, 97 S. Ct. 2720, 2729, citing *Weeks v. Southern Bell Telephone & Telegraph Co.* (5th Cir. 1969), 408 F.2d 228, 235.) The Supreme Court also stated that the [bona fide occupational qualification] exception was in fact meant to be an extremely narrow exception to the general prohibition so that the exception would not swallow the rule. 433 U.S. 321, 334, 53 L. Ed. 2d 786, 800, 97 S. Ct. 2720, 2729.

Applying the principles enunciated by the Supreme Court in *Dothard* to the present case, it is clear that the Merit Board has not met the burden of proof necessary to fall within the exception. The Board has offered no proof that there is a reasonable, factual basis to believe that any person ever arrested would be unable to perform the duties of a county peace officer. There is an important distinction between an arrest and a conviction. An arrest record alone does not indicate guilt or disrespect for the law. The statute only authorizes inquiry into an applicant's conviction record (Ill. Rev. Stat. 1973, ch. 125, par. 58) and the court will not extend the scope of the statutory provision.

■■ In Illinois the boards regulating merit employment systems exercise purely statutory powers and possess only such authority as is legally conferred by express provision of law or such as is incident to accomplishing the express objectives of the boards. (*Fahey v. Cook County Police Department Merit Board* (1st Dist. 1974), 21 Ill. App. 3d 579, 315 N.E.2d 573.) In the present case the Merit Board had authority to certify those applicants who met the qualifications set forth by the legislature. The Merit Board had no authority to expand the qualifications and require a no-arrest record. Thus, it had no authority to require an applicant to furnish his or her arrest record or to summarily reject Wingate on the basis of his arrest record. It is true that under the statute applicable at the time, an applicant's conviction record would result in rejection by the Merit Board. Although there was some testimony that Wingate's conviction record was considered by the Merit Board, it was clearly established that his arrest record was the determinative factor in the rejection. The letter sent to Wingate by the Merit Board specifically stated that he was rejected because of his "unsatisfactory arrest record." The Merit Board has committed a violation of the Fair Employment Practices Act by inquiring on its written application form whether an applicant has ever been arrested and by summarily rejecting applicants on the basis of an arrest record.

The legislature has expressed disapproval of the summary rejection of applicants by employers. Subsequent to the Merit Board's rejection of Wingate, the Illinois General Assembly amended section 8 of the county police department act to eliminate summary rejection on the basis of an applicant's conviction record. As amended section 8 states, "all persons so

appointed shall * * * have not been convicted of a crime which the Board considers to be detrimental to the applicant's ability to carry out his duties, * * *." (Ill. Rev. Stat. 1975, ch. 125, par. 58.) The amended statute is similar to those statutes setting forth the qualifications of State police officers (Ill. Rev. Stat. 1975, ch. 127, par. 63b108b.1) and police officers of cities and villages. (Ill. Rev. Stat. 1975, ch. 24, par. 10—1—7.) An applicant's conviction record may be considered as a factor in determining suitability for a position, but it is not a basis for summary rejection. Although the amended statute is not applicable to the present case, it lends support to the position that summary rejection on the basis of arrest records is improper.

This decision does not necessarily mean that Wingate will be certified by the Merit Board. However, Wingate has a right to reapply for a position and to be given proper consideration of his fitness.

Having concluded that defendant Wingate was wrongfully rejected under the Fair Employment Practices Act, it is not necessary to consider whether Wingate was rejected in violation of his due process and equal protection rights.

For the aforementioned reasons the judgment of the circuit court of Cook County is reversed, and the findings of the Fair Employment Practices Commission are reinstated.

Judgment reversed.

STAMOS, P. J., and BROWN, J., concur.