NORTHERN ILLINOIS GAS COMPANY, Plaintiff-Appellant, *v.* HARTNETT-SHAW EVANSTON, INC., *et al.*, Defendants-Appellees.

First District (1st Division)   No. 76-1561

Opinion filed October 3, 1977.

Adelman & Myers, of Chicago (Harry Adelman and Michael P. Myers, of counsel), for appellant.

Alan R. Johnston and William C. Staszak, both of Jenner & Block, of Chicago, for appellees.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

This record brings before us a complicated series of financial transactions which culminated with institution of this suit. Both Northern Illinois Gas Company (plaintiff) and the defendants (Class C limited partners) filed motions for summary judgments. As we would anticipate from this procedure (Ill. Rev. Stat. 1975, ch. 110, par. 57(3)), there are no genuine issues here as to material facts. We will first state the facts, identifying the parties as we proceed.

On April 1, 1967, a limited partnership named Bank Paza Ltd. (Partnership) was organized under the law of Illinois. (Ill. Rev. Stat. 1975, ch. 106½, par. 44 *et seq.*; hereinafter referred to as the Uniform Limited Partnership Act.) The purpose was construction and operation of the State Bank Building in Evanston. The Partnership had three general partners, and two groups of limited partners referred to as Class A and Class B. One of the general partners was Hartnett-Shaw Evanston, Inc. (Corporation).

In initial organization of the Partnership, the general partners and the single individual who constituted the Class B limited partners together invested $600,000 as a capital contribution to the Partnership. The Class A limited partners also invested $600,000 as a capital contribution. The general partners and the Class A group each loaned the new Partnership $600,000. These two loans were evidenced by 7-percent income debentures executed by the Partnership. Since the Partnership agreement provided that the debentures owned by both types of partners should be retired concurrently, these securities were sometimes referred to as concurrent debentures.

The building was to be equipped with gas appliances for all purposes. As an aid to construction, the Corporation, one of the general partners, negotiated a loan from NI-Gas Energy, Inc. in the amount of $1,100,000. This transaction was worked out by documents dated July 1, 1967. The loan was evidenced by five promissory notes executed by the Corporation drawing interest of 7½ percent per annum. The Corporation secured this loan by pledging its interest in the Partnership and also the Partnership income debentures above described which the Corporation held. The proceeds of this loan were used by the Corporation as its original capital contribution and loan to the Partnership. The sum of $500,000 represented a substantial part of the $600,000 capital contributed by the general partners and the single Class B limited partner. The remaining $600,000 of this loan represented the $600,000 loan advanced by the general partners to the Partnership and evidenced by the 7 percent income debenture issued by the Partnership. This was the debenture pledged by the Corporation to NI-Gas Energy, Inc. as security for the $1,100,000 loan. On October 30, 1970, NI-Gas Energy, Inc. transferred and assigned all of its interest of every kind in the loan transaction to Northern Illinois Gas Company (plaintiff). Plaintiff is presently the owner of the income debenture in the sum of $600,000 executed by the Partnership and originally held by the Corporation.

On June 10, 1969, the Partnership agreement was amended to supply additional capital. This first amendment provided for creation of the Class C limited partners. A total of 16 individuals invested in the project by this participation. This included the 10 Class A limited partners who

acquired 75 percent of the Class C participation. Six new investors acquired the remaining share. The entire Class C group invested $20,000 in cash as additional capital for the Partnership. The Class C group also negotiated an interest bearing loan directly to the Partnership by the Continental Illinois National Bank and Trust Company of Chicago in the amount of $1,200,000. This loan was guaranteed to the lender by the Class C limited partners. The loan was to be repaid in 10 equal annual payments.

The Class C group was to receive a share of Partnership profits which the parties agreed was equivalent to 36 percent. As the loan was repaid this share was to be decreased to a final figure of 5.4 percent. The first amendment to the articles of limited partnership referred to this transaction as secondary financing. It acknowledged that the Class C group had severally guaranteed repayment of the loan. Various individual letters of credit from other banks to the Class C limited partners were pledged by them to Continental as additional security for the loan. The amendment provided that the principal amount of the secondary financing "may be repaid before repayment of the income debentures and shall be repaid * * * in ten equal annual installments beginning with an installment payable on or before June 1, 1971." The amendment also provided that the interest due Continental was to be an expense of the Partnership. On July 31, 1969, a letter of consent to this transaction was executed and delivered by plaintiff's assignor, NI-Gas Energy, Inc. This consent was required as a part of the loan agreement.

On July 7, 1970, by a second amendment effective as of January 1, 1970, the Partnership agreement created Class D limited partners. There were a total of 13 individuals in this group. Nine of them were participants as Class A or Class C limited partners to the extent of 77.1 percent of the total Class D participation. This new group contributed $350,000 in cash as additional Partnership capital. The Class D limited partners also loaned the Partnership $350,000. This loan was evidenced and secured by subordinate debentures executed and delivered by the Partnership which provided for interest at the rate of 10 percent per annum.

On June 1, 1970, a letter agreement was executed by the Corporation and NI-Gas Energy, Inc. plaintiff's assignor. The agreement provided for an increase of interest rate on the promissory notes executed by the Corporation and held by NI-Gas Energy, Inc. to 8½ percent per annum compounded semiannually. The letter evidenced the consent of NI-Gas Energy, Inc., to the creation of the Class D limited partners.

The debenture agreements between the Partnership and the Class D limited partners provided for prior payment by the Partnership of its obligations described as "Senior Debt." This was defined as including the Partnership "indebtedness to be undertaken in order to finance the Project, except the unsecured debentures * * *." However, the

Partnership agreed in the document that it would discharge all of its obligations under the senior debt, the 7 percent income debentures and the "Secondary Financing." These two last words referred to the loan to the Partnership by the Continental Bank guaranteed by the Class C limited partners.

In June of 1975, the Partnership sold its interest in the entire project to an insurance company. The net proceeds of the sale, which may be available for distribution to creditors including the parties to this litigation, is some $400,000. This fund is being administered by the circuit court. The 7 percent concurrent income debentures executed by the Partnership, representing the original loan by the general partners of $600,000 and a loan by the Class A limited partners of like amount, have never been paid. The Partnership made payments to the Continental Bank which reduced the principal amount of the indebtedness of the Partnership, resulting from the secondary financing, to $840,000. On October 15, 1975, this entire principal balance was paid in full to Continental Bank by the Class C limited partners.

Plaintiff's complaint is in two counts. Count I seeks judgment against the Corporation upon the loan agreement and notes for $1,100,000. Count II prays a declaration that the proceeds of sale of the Partnership real estate be divided pro rata between plaintiff and the Class A limited partners.

After a complete hearing on both of the motions for summary judgment, the trial judge filed a memorandum opinion. The court concluded that the equities were with the Class C limited partners who should be subrogated to the rights of the Continental Bank, against the Partnership and thus have priority over the debentures and the rights of plaintiff. The trial judge analyzed the participating percentage granted to the Class C partners in the secondary financing as a bonus for the risk entailed in their guarantee. The court entered a final order granting summary judgment in favor of the Class C limited partners and against plaintiff. The order provided that the indebtedness of the Class C group should be paid in full before any payment from the assets of the Partnership was made to plaintiff and that the net remaining assets of the Partnership were to be paid to the Class C group in proportion to and in full up to the amount of the respective payments by each of the Class C group upon the debt of the Partnership to the Continental Bank. The court also granted judgment in favor of plaintiff against the Corporation, one of the general partners, in the amount of $1,724,137.20 representing balance of principal plus accrued interest on the loan made by plaintiff's assignor to the Corporation.

Plaintiff has appealed from the order denying its motion for summary judgment and granting summary judgment to the Class C limited

partners. In our opinion, only questions of law are presented by this record. In this court plaintiff contends that under the provisions of the Partnership agreement the Partnership debenture issued to the Corporation, a general partner, and presently held by plaintiff should share on an equal basis with sums owed to the limited partners and has priority over the return of capital contributions made by the limited partners; the claims of the Class C partners should be treated as capital investments and subordinated to the concurrent income debentures; even if the Class C claim be considered as a debt rather than a capital contribution the Class C partners should share proportionately with the Class A limited partners and with plaintiff; subrogation of the claims of the Class C partners to the claim of a general creditor of the Partnership would be inequitable; and, finally, that the parties intended that the Class C claims would be subordinate to the income debentures and a conclusion that the parties intended priority for the Class C partners would be totally unreasonable. On the contrary, the Class C partners contend that the Uniform Limited Partnership Act gives priority to the Class C claim over the assignee of a creditor of one of the general partners; the Class C limited partners are entitled to first priority as subrogees of a partnership creditor; section 14 of the Uniform Limited Partnership Act (Ill. Rev. Stat. 1975, ch. 106½, par. 57) is not applicable to the dissolution here and the equities favor the Class C limited partners.

The situations involving the two contending creditors, plaintiff and the Class C partners, are entirely different as will be apparent from even a superficial examination of the facts. Plaintiff's claim arises by virtue of an assignment from NI-Gas Energy, Inc. The claim of plaintiff and of its assignor arises from a loan made from the assignor to the Corporation. The Corporation is one of the general partners in the Partnership. Plaintiff acquired ownership of the income debenture signed by the Partnership only by virtue of a pledge of this security made by the Corporation, plaintiff's debtor. This claim has become liquidated by virtue of a money judgment granted by the court on plaintiff's motion against the Corporation. Entirely to the contrary, the Class C group dealt directly with the Partnership and worked out a loan from the Continental Bank to the Partnership which the Class C limited partners guaranteed. Being liable to the Bank upon this guarantee, the Class C group satisfied the indebtedness by payment of the entire balance to the Bank. Consequently the claim presently made by the Class C group is against the Partnership itself by way of subrogation.

■■ The doctrine of subrogation, generally stated, involves any "person who, pursuant to a legal liability, has paid for a loss or injury resulting from the negligence or wrongful acts of another * * *" and therefore is entitled to stand in the shoes of the person he has

compensated (*Divorak ex rel. Allstate Insurance Co. v. Tempel* (1959), 17 Ill. 2d 181, 190, 161 N.E.2d 258.) "Subrogation has been defined as the substitution of another person in the place of a claimant to whose rights he succeeds in relation to the debt or claim asserted which has been paid by him involuntarily." (*Bost v. Paulson's Enterprises, Inc.* (1976), 36 Ill. App. 3d 135, 139, 343 N.E.2d 168, *appeal denied*, (1976), 63 Ill. 2d 551.) The court in *Bost* also noted that the doctrine includes every instance in which a person, other than a volunteer, pays a debt for which another person is primarily liable. The right exists "as a matter of law and independent of contract * * *." 36 Ill. App. 3d 135, 139.

■■ Applying this principle to the case at bar, the Class C group were not volunteers. On the contrary, as guarantors, they were personally liable to the Continental Bank for full payment of the loan. When the Partnership, as primary debtor, defaulted, the guarantee executed by the Class C partners came into full effect and the Class C group was obliged to make payment in full of the entire loan balance. In such case they should be entitled to be subrogated to the rights of the Continental Bank as creditor against the Partnership as the primary debtor. Thus, whereas plaintiff seeks to enforce a claim against the Corporation as one of the partners, the Class C group seeks enforcement against the Partnership by asserting the rights of the Bank as creditor.

Counsel for plaintiff make a number of arguments against this disposition. Plaintiff first points to three provisions of the articles of limited partnership by which the Partnership was created. Paragraph 14(a) of the articles provides that:

"Income debentures of the General Partners shall be retired concurrently with the income debentures of the Limited Partners."

Paragraph 14(c) of the articles provides that:

"No Partners, whether General or Limited, shall be entitled to the return of his or its capital contributions except to the extent that distributions made pursuant to this Agreement are considered in law to constitute such a return."

Paragraph 17(b) provides that upon termination of the Partnership, if the assets on hand are not sufficient, such assets "shall be distributed without adjustment of accounts between Partners in the Capital Percentages of the Partners* * *."

■■■ None of these provisions affect the rights of the parties in the specific instance here involved. The Class C partners are not seeking to assert any claim by virtue of the provisions of the Partnership agreement. By their claim they attempt to take the place of and stand in the shoes of a creditor of the Partnership whose debt the Class C group has paid to discharge their own personal liability. Plaintiff cites *Lanier v. Bowdoin*

(1939), 282 N.Y. 32, 24 N.E.2d 732, as authority for the principle that the partners of either a general or limited partnership as between themselves may include in the articles of partnership any agreement they wish concerning priorities of distribution on winding up the partnership affairs. That principle is not applicable here because we are dealing with the rights of a subrogee of a creditor of the Partnership rather than with the conflicting rights of partners under their partnership agreement.

■■ The Class C group cites in this regard section 23(1) of the Uniform Limited Partnership Act (Ill. Rev. Stat. 1975, ch. 106½, par. 66(1)). Section 23(1)(a) of this enactment grants first priority to creditors, other than limited partners and general partners, in settling accounts after dissolution. Subparagraph (c) of the same section fixes a lower priority to limited partners with regard to capital contributed by them and subparagraph (d) fixes the next lower priority concerning general partners other than for capital and for profits. Plaintiff seeks relief from a general partner and would in effect stand in the shoes of its debtor, the Corporation, as a general partner. However, the Class C group do not seek relief in their capacity of limited partners. They seek to be subrogated to the rights of a creditor of the Partnership which would grant them the highest priority under subparagraph (a). It is correct, as the Class C group points out, that this statute as existing law "enters into and is a part of" the limited partnership agreement here involved. *Hindu Incense Manufacturing Co. v. MacKenzie* (1949), 403 Ill. 390, 392, 86 N.E.2d 214; *Board of Regents v. Wilson* (1975), 27 Ill. App. 3d 26, 31-32, 326 N.E.2d 216, *appeal denied* (1975), 60 Ill. 2d 595.

■■ Plaintiff next urges that the Class C group obtained a substantial participation in Partnership profits and losses while retaining their own funds until called upon to satisfy their liability upon their guarantee. Consequently, plaintiff asserts that the money advanced by the Class C group in satisfying their obligation should be treated as a capital investment and subordinated to the income debentures held by plaintiff and by the Class A partners. This argument assumes in part facts not in the record before us. No showing was made in either of the motions for summary judgment or elsewhere in the record regarding profits or losses resulting from the operation of the Partnership property. Plaintiff points out here that the Class C group received or had the right to receive a share of profits up to 36 percent which decreased to 5.4 percent as the loan was repaid to the Continental Bank and this arrangement should serve to classify sums advanced by them as capital investments. This argument is contrary to the facts. These funds paid to the Continental Bank by the Class C group pursuant to their guarantee were never paid into the Partnership and were never used as part of its capital. On the contrary,

the Class C claim rests upon a payment made to a creditor which operated to satisfy a liability of the entire Partnership.

Plaintiff here cites and relies upon *Pepper v. Litton* (1939), 308 U.S. 295, 84 L. Ed. 281, 60 S. Ct. 238. The cited case is in no sense comparable to the situation before us. The Supreme Court upheld the power of the bankruptcy court to disallow a judgment obtained by a controlling stockholder of the bankrupt corporation based upon alleged salary claims. The court expressly pointed out that the salary claims did not represent an honest debt of the bankrupt but were bookkeeping entries designed to reduce income taxes and to enable the dominant stockholder to appear as a creditor of the bankrupt. (308 U.S. 295, 301.) The court stressed the fiduciary duty of the dominant stockholder (308 U.S. 295, 311-12), which is not an element in the case before us.

■■ Plaintiff next makes an argument upon a provision in the Uniform Limited Partnership Act providing that by agreement one or more of several limited partners may have priority over other limited partners by way of return of contributions, compensation or any other matter; and, absent such agreement as evidenced in the certificate of partnership, all the limited partners shall stand upon equal footing. (Ill. Rev. Stat. 1975, ch. 106½, par. 57.) In our opinion this portion of the statute is not applicable here. The record presents no issue regarding differential in priority or treatment as between limited partners.

■■ In this regard, plaintiff directs our attention to an agreed order entered by the court in which the court, with the consent of all parties hereto, directed payment to certain general creditors from the Partnership assets. Plaintiff urges that this should operate as a waiver by the Class C group of their claim to priority. We cannot draw a waiver of this type from the order. We accept the response by the Class C group to this argument which is that the creditors in question were paid by agreement of all parties in order to keep the real estate in question open and functioning. In addition, no issue regarding priority between the Class C partners and general creditors of the Partnership is presented by this record.

The balance of the argument by plaintiff is directed at an alleged lack of equity in the position taken by the Class C group. Plaintiff cites cases to the effect that subrogation is an equitable remedy as distinguished from a legal right (*Makeel v. Hotchkiss* (1901), 190 Ill. 311, 319-20, 60 N.E.524), and that subrogation will be applied to prevent injustice and to accomplish justice regardless of form. (*People ex rel. Nelson v. Chicago Lawn State Bank* (1940), 306 Ill. App. 107, 28 N.E.2d 294.) The doctrine of subrogation did originate as a remedy applied by the courts of chancery. However, the modern view considers subrogation as governed by

equitable principles and as being a "favorite of the law\* \* \*" (*Remsen v. Midway Liquors, Inc.* (1961), 30 Ill. App. 2d 132, 145, 174 N.E.2d 7), and as being actually "an integral part of the common law \* \* \*" (*Pennwalt Corp. v. Metropolitan Sanitary Dist.* (N.D. Ill. 1973), 368 F.Supp. 972, 978). Plaintiff's contention actually is that it has equities superior to those demonstrated by the Class C group. Plaintiff points out remarks in the memorandum opinion of the trial court to the effect that when the Class C group guaranteed the Bank loan, the Partnership was distressed and yet the Class C group contributed fresh funds to the enterprise at the risk of their own credit.

■■ We find nothing specific in the record before us regarding distressed condition of the Partnership at the time of the loan from Continental Bank. It would seem to us that the able trial judge was in effect drawing upon his own knowledge and experience when he inserted this language into the order. However, the correctness of these statements in the order appealed from is not material here. The issue before us is simply the legal validity of the order itself. (*Waldron v. Waldron* (1973), 13 Ill. App. 3d 964, 968, 301 N.E.2d 167.) In addition, as we view this situation, the financial condition of the Partnership at any given time is hardly material. We must advert once more to the established and apparent fact that the plaintiff depends upon its status as creditor of the Corporation as one of the general partners whereas the Class C group does not seek benefits as limited partners but is attempting to stand in the shoes of a general creditor of the entire Partnership by virtue of the doctrine of subrogation. In our opinion, this record shows no reason for refusal of subrogation and nothing which we can term inequitable as a result of allowing it. On the contrary it seems to us that strong equities favor the Class C limited partners. The Partnership was primarily liable to the Continental Bank for the debt guaranteed by the Class C group. Requiring payment from the primary debtor should not be classed as inequitable. It is the legal and equitable duty of the Partnership to repay the Class C participants for moneys they advanced in payment of the Partnership debt.

In our opinion, the result reached by the trial court in the order granting priority to the Class C group over plaintiff is proper in all respects and it is affirmed.

Order affirmed.

McGLOON and O'CONNOR, JJ., concur.