DENTON ENTERPRISES, INC., *et al.*, Plaintiffs-Appellants, *v.* THE ILLINOIS STATE TOLL HIGHWAY AUTHORITY, Defendant-Appellee.

First District (1st Division)   No. 79-229

Opinion filed October 1, 1979.

Coffield, Ungaretti, Harris & Slavin, of Chicago, and Butzel, Long, Gust, Klein & Van Zile, of Detroit, Michigan (Michael W. Coffield, Edward F. Novak, Kevin M. Flynn, and Leslie W. Fleming, of counsel), for appellants.

William J. Scott, Attorney General, of Oak Brook (Richard E. Freidman and Randall E. Server, Special Assistant Attorneys General, of counsel), for appellee.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

Denton Enterprises, Inc., and Holloway Construction Company (plaintiffs) filed an action against the Illinois State Toll Highway Authority (Authority) claiming additional contract charges and damages arising out of a construction project on the East-West Tollway. The trial court dismissed counts I through XIII and XV through XXVI on the ground that plaintiffs had waived any claims for damages arising out of the contracts by their acceptance of final payment. Plaintiffs appeal.

A preliminary observation is essential. The defendant filed a "Motion Attacking The Complaint." This motion is a hybrid. It seeks dismissal of plaintiffs' complaint under section 48 of the Civil Practice Act because of the existence of affirmative matter avoiding the claim. (Ill. Rev. Stat. 1977, ch. 110, par. 48(1)(i).) It also seeks to strike many specified portions of the complaint on the ground that they are substantially insufficient in law under section 45 of the Civil Practice Act.

Plaintiffs filed a response to defendant's motion "attacking the complaint." This response contains argument and exhibits together with a memorandum of law. Both defendant's motion and plaintiffs' response are supported by affidavits. In addition, the record contains other affidavits and depositions.

■■ As the supreme court has pointed out, this type of procedure "is likely to confuse both the parties and the court." (*Janes v. First Federal*

*Savings & Loan Association* (1974), 57 Ill. 2d 398, 406, 312 N.E.2d 605.) *Janes* involved a motion under section 45 combined with a motion for summary judgment. As the supreme court stated, the summary judgment procedure "almost necessarily assumes that a cause of action has been stated * * *" (*Janes*, 57 Ill. 2d 398, 406). The comments made in *Janes* are applicable here. We have concluded that the most expeditious manner of disposition of this appeal is to consider the proceeding before us as a motion under section 48 of the Civil Practice Act. In this determination we follow the implied agreement between the litigants here. The briefs of the parties contain no argument concerning the legal sufficiency of plaintiffs' complaint as regards the motion of defendant to strike based on section 45. Consequently this issue has been waived under Supreme Court Rule 341(e)(7). See Ill. Rev. Stat. 1977, ch. 110A, par. 341(e)(7); *People ex rel. Rappaport v. Drazek* (1975), 30 Ill. App. 3d 310, 317, 332 N.E.2d 532.

The following facts appear from the proceedings. Plaintiffs are contractors. Individually and as a joint venture they were awarded contracts by the Authority for construction of certain sections of the East-West Tollway. The Standard Specifications for the Northern Illinois State Toll Highway (1971) were incorporated into each contract by reference. Section 109.7 of said Standard Specifications states in relevant part:

"The acceptance by the Contractor of the final payment shall constitute a release and waiver of any and all rights and privileges under the terms of the Contract; further, the acceptance by the Contractor of final payment shall relieve the Authority from any and all claims or liabilities for anything done or furnished relative to The Work or for any act or neglect on the part of the Authority relating to or connected with the Contract."

Both contracts provided for completion dates of August 1, 1973, at which time plaintiffs were to receive final payment. Plaintiffs did not complete the work until April of 1975. They alleged the delay was caused by misrepresentation by defendant of the contract work, acceleration of the work, refusal of the Authority to deal with changed conditions and other alleged acts of breach and misconduct. Plaintiffs alleged damages in unanticipated costs and losses aggregating millions of dollars. In accordance with the contract, the Authority held 10 percent of all interim payments as a retainage. This sum was to be paid to plaintiffs as part of the final payments under the contracts. Representatives of plaintiffs advised the Authority of their intention to take action against it for damages and additional compensation.

On or about July 18, 1975, representatives of Newberg-Krug-Brighton, another contractor involved in the tollway project, inquired of Assistant Attorney General John Lavery, chief of the legal department of the Authority, whether something could be done to permit contractors to

accept final payments without waiving their claims. Lavery wrote a memorandum, dated July 18, 1975, to Richard Blakely (who was at the time executive director of the Authority), informing him of the request and advising him that under the contract specifications, final payment could not be made without a release and waiver of claims by the contractors.

Although not on the agenda for their regular meeting on July 31, 1975, the board of directors of the Authority considered a modification of section 109.7 of the Standard Specifications (above quoted) regarding the effect of final payment. The directors made no request to the Authority's legal counsel for preparation of any resolution pertaining to this subject matter. Assistant Attorney General John Lavery was present at the directors' meeting in his capacity of chief of the legal department of the Authority. A motion was proposed by C. A. Benowicz, chief engineer for the Authority, and adopted unanimously by the Board. The following is an excerpt from the official minutes of the meeting:

"Mr. Benowicz then requested that the following motion relating to final payments be adopted: 'In consideration of the specific history which has been related and the attendant problems of equity which exist, and for purposes of achieving uniformity with contracts let by the Department of Transportation, together with expressions by the Court relative to interpretation of acceptance of final payments constituting a release and waiver of any and all privileges under the terms of the contract, it is my recommendation that the Directors exercise their prerogative to "reform" the contractual provision of any contract presently in progress and all future contracts in this area by providing that whenever the improvement provided for by the contract shall have been completely performed on the part of the Contractor and all parts of The Work have been approved by the Engineer and the Consulting Engineer and accepted by the Authority, unless the Contractor prosecutes a legal action within sixty days after the acceptance of final payment, the final payment shall constitute a release and waiver of any and all rights and privileges under the terms of the contract and shall relieve the Authority from any and all claims or liabilities for anything done or furnished relative to The Work and for any act of negligence or omission on the part of the Authority relating to or connected with the Contractor.'

Mr. Sosewitz then advised the Board that he was in agreement with the motion and pointed out that on other occasions the Consulting Engineers had requested similar actions.

Director Voss commented that he, too, was in agreement with the motion and further pointed out that, as a result of this motion,

the Authority could possibly look for a little lower bidding in the future.

Director Moore moved for the adoption of said motion; seconded by Director Voss.

Mr. Blakely then inquired of the Chief of the Legal Department if there would be any problem of the Directors having a right to reform any contract. Mr. Lavery responded that there would be no problem.

Chairman Binder then called for a voice vote, and there being 'Ayes' and no 'Nays', declared said motion adopted by unanimous vote."

Pursuant to this action, Mr. Benowicz sent letters dated August 12, 1975, to plaintiffs enclosing copies of the adopted change of section 109.7 of the original contract. The enclosure stated:

"Unless the Contractor prosecutes legal action within sixty days after the acceptance of final payment, the final payment shall constitute a release and waiver of any and all rights and privileges under the terms of the contract, and shall relieve the Authority from any and all claims or liabilities for anything done or furnished relative to The Work and for any act or neglect on the part of the Authority relating to or connected with the contract.

Approved July 31, 1975."

The letters stated to plaintiffs that the board of directors of the Authority had approved this motion to modify section 109.7 of the Standard Specifications. Each plaintiff acknowledged and accepted this modification. Plaintiffs then accepted final payment of some $2,400,000. Within the 60-day period, they filed this action claiming some $25,000,000 in damages.

The toll highway authority act (Ill. Rev. Stat. 1977, ch. 121, par. 100—1 et seq.) expressly vests in the Authority all powers necessary or appropriate to carry out the purposes of the act. Section 8 provides:

"The Authority shall have the power:
* * *
"(b) To enter into all contracts and agreements necessary or incidental to the performance of its powers under this Act." Ill. Rev. Stat. 1977, ch. 121, par. 100—8.

Section 15 provides:

"The Attorney General of the State of Illinois, shall be ex officio attorney for the said Authority and he shall be its legal adviser and legal representative. In addition to the specific duties imposed upon the said Attorney General, under the provisions of this Act, it shall be his further duty to act as attorney for the Authority in all of its transactions, and to represent the Authority in all of its litigation,

and to examine and approve all contracts, leases, bonds or other undertakings or obligations entered into by the Authority, as to their form and constitutionality prior to their execution and delivery." Ill. Rev. Stat. 1977, ch. 121, par. 15.

Plaintiffs maintain that section 15 of the act does not make approval by the Attorney General a condition precedent to an otherwise valid modification of a contract. They argue that since the Authority's motion to dismiss makes no claim that there is any defect as to form or constitutionality in the modification of the contract, lack of approval by the Attorney General is without legal significance. We cannot agree.

■■ The toll highway authority act expressly requires the Attorney General "to examine and approve all contracts * * * as to their form and constitutionality prior to their execution and delivery." (Ill. Rev. Stat. 1977, ch. 121, par. 100—15.) In applying this statute we have no option but to follow its plain language. (See *American Buyers Club v. Zuber* (1978), 57 Ill. App. 3d 899, 902, 373 N.E.2d 786.) There is neither necessity nor legal authority for us to indulge in construction or speculation.

Even assuming that the process of construction is warranted, it is a primary canon that a statute must be construed so as to ascertain and give effect to the intention of the General Assembly as expressed therein. (*Franzese v. Trinko* (1977), 66 Ill. 2d 136, 139, 361 N.E.2d 585; *Parliament Insurance Co. v. Department of Revenue* (1977), 50 Ill. App. 3d 341, 346, 365 N.E.2d 667, *appeal denied* (1977), 66 Ill. 2d 631.) The specific words used in the statute are the best indicators of the legislative intent behind the enactment. (*Illinois Bell Telephone Co. v. Powell* (1971), 48 Ill. 2d 375, 378, 270 N.E.2d 25.) Additionally, " 'A statute should be so construed, if possible, that no word, clause or sentence is rendered meaningless or superfluous.' " *People v. Lofton* (1977), 69 Ill. 2d 67, 72, 370 N.E.2d 517; *People v. Warren* (1977), 69 Ill. 2d 620, 627, 373 N.E.2d 10.

The clear purpose of section 15 is to protect the public generally and those specifically who invested in revenue bonds issued by the Authority by giving the Attorney General the power to approve or disapprove contracts as to form and constitutionality. In our opinion, the Authority and those who contract with it may not ignore this statutory requirement. This is especially true in the case before us. The resolution of the Authority here involved did not only purport to modify the existing contracts between the Authority and the plaintiffs. It also applied the same modification to "any contract presently in progress and all future contracts in this area * * *." If plaintiffs' interpretation is adopted, the approval by the Attorney General would be rendered superfluous and meaningless and the statute negated.

■■ In our view, where a statute prescribes the method by which an officer or agent may bind an administrative agency of the State of Illinois

such as the Authority (Ill. Rev. Stat. 1977, ch. 121, par. 100—15), that method must be followed. There can be no implied contract or implied liability of such an agency without compliance with the specified statutory requirements and the approval of the Attorney General. (See *Gustafson v. Wethersfield Township High School* (1943), 319 Ill. App. 255, 259-60, 49 N.E.2d 311.) Accordingly, we find that a contract entered into by the Authority may not be enforced absent approval by the Attorney General of Illinois as to form and constitutionality. The issue as to whether or not there actually is a defect of form or constitutionality in the attempted contract modification is not material here. The attempted modification here applied not only to the contracts between plaintiffs and the Authority but to any other "contract presently in progress and all future contracts in this area."

Plaintiffs futher contend that the decision in *Newberg-Krug-Brighton v. Illinois State Toll Highway Authority* (1978), 63 Ill. App. 3d 780, 380 N.E.2d 1029, *appeal denied* (1979), 74 Ill. 2d xix, controls the instant case and constitutes collateral estoppel against the Authority as to the legal issue asserted in the Authority's motion to dismiss.

■■■ In *Department of Transportation v. Shaw* (1977), 68 Ill. 2d 342, 347-48, 369 N.E.2d 884, the supreme court quoted from *People ex rel. Chicago & Eastern Illinois R.R. Co. v. Fleming* (1969), 42 Ill. 2d 231, 235, 246 N.E.2d 275:

> " 'To operate as an estoppel by verdict it is absolutely necessary that there shall have been a finding of a specific fact in the former judgment or record that is material and controlling in that case and also material and controlling in the pending case. It must also conclusively appear that the matter of fact was so in issue that it was necessarily determined by the court rendering the judgment interposed as a bar by reason of such estoppel. If there is any uncertainty on the point that more than one distinct issue of fact is presented to the court the estoppel will not be applied, for the reason that the court may have decided upon one of the other issues of fact. [Citations.]' "

Another case which strongly presents the same principle is *Lange v. Coca-Cola Bottling Co.* (1969), 44 Ill. 2d 73, 75, 254 N.E.2d 467. The court there refused to apply the theory of collateral estoppel because of the absence of specific findings of fact in the prior litigation. The court cited *Fleming*, and stated the principle in the same language above quoted.

■■ No findings of fact, material and controlling or otherwise, were made in the unrelated litigation involved in *Newberg*. That case was concerned solely with the sufficiency of a complaint under section 45 of the Civil Practice Act on the legal ground that it failed to state a cause of action. (*Newberg*, 63 Ill. App. 3d 780, 781.) By its very nature, as above defined,

the doctrine of collateral estoppel "pertains to the relitigation of facts, not to questions of law." (*Village of Northbrook v. Cannon* (1978), 61 Ill. App. 3d 315, 322, 377 N.E.2d 1208.) We find no possibility of collateral estoppel arising from the *Newberg* decision.

Furthermore, in our opinion, *Newberg* is not binding authority of any kind with reference to the problem before us in the instant case. *Newberg* involved simply negotiations between plaintiff there and the Authority which resulted in "a compromise settlement of their dispute proposed by Newberg" and presented to the Authority by the Assistant Attorney General for its acceptance. (*Newberg*, 63 Ill. App. 3d 780, 781-82.) This approval of a settlement involves simply the exercise of business judgment by the Authority. Entirely to the contrary, the case before us involves a modification of the agreement between the parties which was previously approved by the Attorney General and also a modification of an undetermined number of possible other contracts in progress and "all future contracts in this area." This is tantamount to the creation of a totally new contract between these parties and possible other contract modifications all without approval of the Attorney General as required by the pertinent statute.

Plaintiffs next contend that the Authority is equitably estopped from asserting and relying upon acceptance of final payment as a release and waiver of the contractors' claims against the Authority. Under Illinois law, the doctrine of equitable estoppel may be invoked only in cases where words or conduct of the party against whom the estoppel is alleged amount to a misrepresentation or concealment of a material fact. The party claiming the benefit of estoppel "must have relied upon the actions or representations of the other and must have had no knowledge or convenient means of knowing the true facts." *Levin v. Civil Service Com.* (1972), 52 Ill. 2d 516, 524, 288 N.E.2d 97; *Jackson v. Civil Service Com.* (1976), 41 Ill. App. 3d 87, 94-95, 353 N.E.2d 331, *appeal denied* (1976), 64 Ill. 2d 596.

Consequently, for plaintiffs to prevail on a theory of equitable estoppel, it is incumbent upon them to prove that they had relied upon some act or representation of fact and had no knowledge or means of knowing the true facts. See *Pantle v. Industrial Com.* (1975), 61 Ill. 2d 365, 371, 335 N.E.2d 491.

■ Both of these essential elements are lacking in the instant situation. Plaintiffs contend they relied on the letter of modification written by Chief Engineer Benowicz. If the modification were enforceable, the representations in the letter would be true. Therefore, it is clear that the misrepresentation, if any, goes to the Authority's capacity to be bound by the Benowicz letter without approval by the Attorney General. This is a pure question of law, not a misrepresentation of material fact. Mistake of

law is not a basis for application of equitable estoppel. See *George v. City of Danville* (1943), 383 Ill. 454, 50 N.E.2d 467.

■ Additionally, plaintiffs fail in the second element of estoppel. They, and the Authority, are charged with the knowledge of the contractual limitations which the law places upon the Authority and its officials. (*George*, 383 Ill. 454, 459; *Board of Education v. Chicago Teachers Union* (1975), 26 Ill. App. 3d 806, 812, 326 N.E.2d 158.) Plaintiffs knew that their original contract was approved by the Attorney General as indicated by his signature directly on the contract. They also knew or should have known of the existence of section 15 of the toll highway authority act. "The law, including statutes, existing at the time and place of the making of a contract is deemed a part of that contract to the same extent as though expressly referred to or incorporated in the contract." (*Perlman v. First National Bank* (1973), 15 Ill. App. 3d 784, 794, 305 N.E.2d 236, *appeal dismissed* (1975), 60 Ill. 2d 529; see also *Northern Illinois Gas Co. v. Hartnett-Shaw Evanston, Inc.* (1977), 53 Ill. App. 3d 562, 570, 368 N.E.2d 742; also *Board of Regents v. Wilson* (1975), 27 Ill. App. 3d 26, 31-32, 326 N.E.2d 216, *appeal denied* (1975), 60 Ill. 2d 595, and cases there cited.) The Benowicz letter, if valid, would be a major and material modification of the original contract terms and of all future contracts in this area. Since the Attorney General's approval did appear on the original contract but was absent from the Benowicz letter, plaintiffs should reasonably have been put on notice that this attempted contract modification had not received the approval of the Attorney General as to its form and constitutionality. The doctrine of equitable estoppel is not applicable here.

■ Plaintiffs next contend that the action by the board of directors on July 31, 1975, constituted a waiver by the Authority of the right subsequently to assert acceptance of final payment as a defense to plaintiffs' claims. The classic definition of a waiver is the intentional relinquishment of a known right. (*Pantle v. Industrial Com.* (1975), 61 Ill. 2d 365, 372; *Allstate Insurance Co. v. National Tea Co.* (1975), 25 Ill. App. 3d 449, 461, 323 N.E.2d 521, *appeal denied* (1975), 58 Ill. 2d 596.) "Waiver differs from estoppel in that the former considers only one's own conduct 'without regard to its effect upon the party benefiting from the waiver.'" (*Allstate*, 25 Ill. App. 3d 449, 461.) Parties to an express contract may waive portions of its provisions. (*Jacobs v. Carroll* (1977), 46 Ill. App. 3d 74, 83, 360 N.E.2d 136.) However, it is a well-accepted and salutary rule that the benefits of a statute may not be waived where the statute was enacted for the protection of the public generally. *Boyer v. Atchison, Topeka, & Santa Fe Ry. Co.* (1967), 38 Ill. 2d 31, 39, 230 N.E.2d 173; *Foreman v. Holsman* (1957), 10 Ill. 2d 551, 554, 141 N.E.2d 31; *People ex*

*rel. Lindberg v. Memorial Consultants, Inc.* (1977), 50 Ill. App. 3d 1005, 1010, 366 N.E.2d 127, *appeal denied* (1977), 66 Ill. 2d 641.

■■ Section 1 of the Illinois toll highway authority act states the legislative purpose and public policy behind the act. It provides (Ill. Rev. Stat. 1977, ch. 121, par. 100—1):

> "It is hereby declared, as a matter of legislative determination, that in order to promote the public welfare, and to facilitate vehicular traffic by providing convenient, safe, modern and limited access highways designed for the accommodation of the needs of the traveling public through and within the State of Illinois, that it is necessary in the public interest to provide for the construction, operation, regulation and maintenance of a toll highway or a system of toll highways, incorporating therein the benefits of advanced engineering skill, design, experience and safety factors, to eliminate existing traffic hazards, and to prevent automotive injuries and fatalities, and to create The Illinois State Toll Highway Authority, as an instrumentality and administrative agency of the State of Illinois, and to confer upon and vest in said Authority all powers necessary or appropriate to enable said Authority to carry out the foregoing stated legislative purpose and determination."

It follows necessarily that to enable the Authority to carry out this express legislative purpose the Authority must obtain approval to any modification of its contracts and this requirement may not be waived by an action of the board of directors of the Authority.

Plaintiffs' final contention is that the finding by the trial court that the Attorney General did not approve the action of the Authority is contrary to the evidence and in violation of section 48(3) of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 48(3)). "The purpose of a section 48 motion is to afford a means of obtaining a summary disposition of issues of law or of easily proved issues of fact, which, if established by the record, enables the court to determine with reasonable certainty that the alleged defense exists." (*Loughman Cabinet Co. v. C. Iber & Sons, Inc.* (1977), 46 Ill. App. 3d 873, 876, 361 N.E.2d 379.) Section 48(3) provides:

> "If, upon the hearing of the motion, the opposite party presents affidavits or other proof denying the facts alleged or establishing facts obviating the grounds of defect, the court may hear and determine the same and may grant or deny the motion. If a material and genuine disputed question of fact is raised the court may decide the motion upon the affidavits and evidence offered by the parties, or may deny the motion without prejudice to the right to raise the subject matter of the motion by answer and shall so

deny it if the action is one in which a party is entitled to a trial by jury and a jury demand has been filed by the opposite party in apt time." Ill. Rev. Stat. 1977, ch. 110, par. 48(3).

■■ Therefore, if a material and genuine issue of fact is raised and a jury has been demanded, a trial court may not weigh the evidence set forth in the affidavits and counteraffidavits, thereby denying a trial by jury. *Komel v. Commonwealth Edison Co.* (1977), 56 Ill. App. 3d 967, 973, 372 N.E.2d 842, *appeal denied* (1978), 71 Ill. 2d 603; *Greenstein v. Nogle* (1972), 5 Ill. App. 3d 594, 599, 283 N.E.2d 492.

Plaintiffs maintain that a genuine and material issue of fact exists and, since they have demanded a jury, the trial court erred in deciding this issue. The Authority responds that the trial court did not err in making a finding based upon uncontroverted affidavits.

In response to plaintiffs' complaint, the Authority filed a motion "attacking" the complaint, an excerpt from the minutes of the July 31, 1975, board meeting, the Benowicz letters to both plaintiffs, an affidavit by Claudia Tonella, manager of the office of central information systems of the Authority attesting to the authenticity of the above documents, and a memorandum of law in support of the motion to dismiss. Plaintiffs responded and filed the entire minutes of the July 31, 1975, meeting, the Standard Specifications, and a memorandum of law in support of their response.

The Authority then filed an affidavit by John Lavery, Assistant Attorney General and chief of the Authority's legal department. He denied that he or his office approved the modification in question. He denied that his office prepared or even saw the Benowicz letters prior to their issuance and acceptance by plaintiffs. Lavery also stated that when he was asked the question during the July 31 meeting as to whether there "would be any problem of the directors having a right to reform any contract", he thought it to be a "general and theoretical" inquiry concerning whether the directors had a right to reform *any* contract. Consequently, he told the directors that there would be no problem. Lavery further emphasized in this affidavit that this question did not refer to the proposed Benowicz motion and he did not approve this motion or the contract modification contained in the Benowicz letters. The Authority also filed two affidavits signed by Casmir A. Benowicz stating that to the best of his knowledge the motion he introduced at the July 31, 1975, meeting and the letters written by him to the plaintiffs were not prepared by the Attorney General or by that office. He stated further that he did not consult with the Attorney General's office in the above matters.

■■ In our opinion, the trial court did not err in concluding that there was no material and genuine disputed issue of fact. Plaintiffs have presented no written approval of the modification by the Attorney General.

Plaintiffs do not allege there is any written approval by the Attorney General similar to that endorsed on the original contracts between plaintiffs and the Authority. They rest their contention of approval solely on the statement made by Lavery during the July 31 meeting. The minutes of the meeting are undisputed. The affidavit by Lavery concerning his interpretation of the incident and the affidavit by Benowicz are undisputed by counteraffidavits. The depositions of members of the board of directors of the Authority do not actually conflict with the Lavery affidavit so as to raise a material and genuine issue of fact. Where facts within an affidavit are not contradicted by counteraffidavit, they must be taken as true notwithstanding the existence of contrary unsupported allegations in the adverse party's pleadings. (*Fooden v. Board of Governors* (1971), 48 Ill. 2d 580, 587, 272 N.E.2d 497, *cert. denied* (1972), 408 U.S. 943, 33 L. Ed. 2d 766, 92 S. Ct. 2847. See also *Heidelberger v. Jewel Companies, Inc.* (1974), 57 Ill. 2d 87, 92-93, 312 N.E.2d 601; *Carruthers v. B. C. Christopher & Co.* (1974), 57 Ill. 2d 376, 381, 313 N.E.2d 457, and *Central Clearing, Inc. v. Omega Industries, Inc.* (1976), 42 Ill. App. 3d 1025, 1028, 356 N.E.2d 852.) Thus there is no dispute as to the factual elements here involved.

Whether Lavery's statement during the meeting constituted approval by the Attorney General is a question of law. In our view, Lavery's statement was a general reference to the reformation of any contract, and did not constitute an approval of the Benowicz modification as required by the statute. The Lavery and Benowicz affidavits state that the Attorney General's office did not examine or approve the motion or the Benowicz letters. Since there is no counteraffidavit, these statements must be taken as true. We find no basis for concluding that the Attorney General approved the modification to the contracts either expressly or by implication. The judgment appealed from is affirmed.

Judgment affirmed.

McGLOON and CAMPBELL, JJ., concur.