ANDREW J. DWYER *et al.*, Plaintiffs-Appellees, *v.* DANIEL R. GRAHAM *et al.*, Defendants-Appellants.

Second District No. 81—1038

Opinion filed November 12, 1982.

William L. Balsley, of Loves Park, for appellants.

William W. Reedy, of Vella and Reedy, of Rockford, for appellees.

JUSTICE HOPF delivered the opinion of the court:

This case is before this court for the second time. Defendant Graham originally appealed from an order of the circuit court of Winnebago County declaring a lease between the parties unenforceable. We dismissed that appeal for lack of jurisdiction because the trial court had expressly retained jurisdiction over issues raised in defendant's counterclaim and had not made a finding that there was no just reason to delay the appeal of the declaratory judgment portion of its order, as required by Supreme Court Rule 304(a) (73 Ill. 2d R. 304(a)). Following our dismissal of the appeal defendant returned to the trial court and moved to dismiss his counterclaim. This motion was granted. Defendant again appeals from the declaratory judgment, al-

leging as error: (1) that he was improperly denied the right to a trial by jury; (2) that plaintiffs are barred by the doctrines of estoppel and *laches* from seeking to have the lease agreement declared invalid and; (3) that certain evidence submitted by defendant was improperly excluded by the court. The plaintiffs have moved to dismiss this appeal.

On June 14, 1973, the parties entered into a written contract for the sale and purchase of certain equipment connected with plaintiffs' cement business. Paragraphs one, two and three of a document entitled "Agreement of Sale" provided that defendants would purchase the equipment for $13,000. The defendants were to convey to plaintiffs lots 13, 14 and 15 of the Tresemer Subdivision, valued at $3,000 each, and a $4,000 note payable on or before January 1, 1974. Paragraphs four, five, six and seven of the agreement provided for a lease of plaintiffs' ready-mix cement plant at a rental of $1 per yard of concrete delivered. The lease was to continue for "as long as [defendants] desired," and plaintiffs were to maintain the ready-mix plant as long as the rental agreement was in effect. Prior to the commencement of this action, defendant Graham purchased defendant Tresemer's interest in the equipment, and Tresemer is therefore not an active party in these proceedings.

On November 30, 1979, plaintiffs commenced this declaratory judgment action requesting the court to declare the lease invalid and unenforceable because it was not reasonably limited in duration and because it lacked mutuality of obligation. Plaintiffs argued it was therefore terminable at will by either party. Defendant Graham filed his answer to the complaint, raising the affirmative defenses of estoppel and *laches*. He also filed a counterclaim, which was subsequently dismissed on defendant's motion, requesting damages and asserting that the lease agreement was part of plaintiffs' consideration for the sale and purchase of the equipment. Prior to trial, plaintiffs requested leave to withdraw their previously entered jury demand, and defendant requested leave to enter his jury demand. The court granted plaintiffs' motion but denied defendant's motion on the ground that there were no triable issues of fact.

The cause proceeded to trial and the court found the parties entered into a severable contract; the first being the sale and purchase of the cement equipment and the second being the lease agreement. It declared that the lease portion of the contract was terminable at the will of the parties, that it had in fact been terminated by the plaintiffs here, and that the parties had no further rights under the agreement.

We first turn our attention to plaintiffs' motion to dismiss the instant appeal. Plaintiffs' argument is three-fold: (1) that the issues here

involved were disposed of by the previous order of this court dismissing the original appeal; (2) that this appeal was foreclosed by defendant's motion to dismiss his counterclaim, and; (3) that the trial court lacked jurisdiction to dismiss defendant's counterclaim because at the time of the dismissal the mandate from the appellate court was not yet filed. We have considered each of these contentions and find them to be without merit.

 The previous order of this court dismissed the original appeal on jurisdictional grounds and did not reach the merits of the underlying litigation. Thus, this appeal remains unaffected by our prior order. (*Weiland Tool & Manufacturing Co. v. Whitney* (1969), 44 Ill. 2d 105, 251 N.E.2d 242.) Further, the dismissal of the counterclaim with prejudice affects only the issues involved in the counterclaim and not the completely separable issues involved in the appeal from the declaratory judgment order. In his counterclaim defendant argued that the lease represented part of plaintiff's consideration for the allegedly premium purchase price of the cement equipment. However, this same argument also formed the basis of defendant's estoppel defense. Thus, the dismissal of defendant's counterclaim does not waive consideration of this claim on appeal. Finally, the trial court had jurisdiction to dismiss defendant's counterclaim prior to the filing of the appellate court mandate in the original appeal. Ordinarily the filing of a notice of appeal divests the trial court of jurisdiction to enter further orders of substance in a cause (*City of Chicago v. Scandia Books, Inc.* (1981), 102 Ill. App. 3d 292, 430 N.E.2d 14; *In re Johnson* (1981), 102 Ill. App. 3d 1005, 429 N.E.2d 1364), and jurisdiction is not regained, if at all, until the filing of the appellate court mandate in the circuit court. (*Bank v. Nestrick* (1981), 94 Ill. App. 3d 511, 418 N.E.2d 515; *Kuhlman v. Cotter* (1968), 92 Ill. App. 2d 475, 234 N.E.2d 815.) However, this general rule does not apply where the notice of appeal is filed prematurely from an order or judgment which is not yet a final and appealable order. (*King City Federal Savings & Loan Association v. Ison* (1980), 80 Ill. App. 3d 900, 400 N.E.2d 562.) In this situation, the notice of appeal does not divest the trial court of jurisdiction to proceed with the case, nor does it vest the appellate court with jurisdiction to consider it. (80 Ill. App. 3d 900; *Myers v. Myers* (1977), 51 Ill. App. 3d 830, 366 N.E.2d 1114; *Loveless v. Loveless* (1972), 3 Ill. App. 3d 967, 279 N.E.2d 531.) Thus, in the present case, the trial court retained jurisdiction of this cause throughout the appellate court proceedings. Its dismissal of defendant's counterclaim prior to the issuance of the appellate court mandate was therefore entirely proper. Plaintiffs' motion to dismiss the instant appeal is there-

fore denied.

We turn now to the merits of defendant's appeal, and first consider the contention that plaintiff was barred from challenging the validity of the contract by the doctrines of *laches* and estoppel. Defendant's *laches* defense is premised upon the plaintiffs' failure to assert the invalidity of the contract until 1979, six years after the agreement was executed. He further claims that he was greatly prejudiced as a result of this delay since he expended large amounts of time, effort and money in the development of the leased business.

In order to charge a plaintiff with *laches*, it is essential that the plaintiff knows the facts upon which his claim is based. (*Mitchell v. Simms* (1979), 79 Ill. App. 3d 215, 398 N.E.2d 211.) In determining whether *laches* will bar a particular cause of action all the circumstances of the case will be considered. (*Payne v. Williams* (1980), 91 Ill. App. 3d 336, 414 N.E.2d 836.) One consideration is the lack of knowledge or notice on the part of the defendant that the complainant would assert the right on which he bases his suit. (*Bonner v. Westbound Records, Inc.* (1977), 49 Ill. App. 3d 543, 552, 364 N.E.2d 570, 576; *Pyle v. Ferrell* (1958), 12 Ill. 2d 547, 553, 147 N.E.2d 341, 344.) In addition, any circumstances tending to explain or excuse the delay in asserting one's rights should be considered. (*Mitchell v. Simms; Harnois v. Harnois* (1973), 10 Ill. App. 3d 1062, 295 N.E.2d 511, *cert. denied* (1974), 415 U.S. 948, 39 L. Ed. 2d 564, 94 S. Ct. 1470.) The application of the doctrine of *laches* is within the sound discretion of the trial court, and the decision of the trial court to apply or not apply the doctrine will not be disturbed unless a clear abuse of discretion appears. *Finley v. Finley* (1980), 81 Ill. 2d 317, 410 N.E.2d 12; *Beckham v. Tate* (1978), 61 Ill. App. 3d 765, 378 N.E.2d 588.

■ In the present case, we do not find an abuse of discretion in the trial court's refusal to apply the doctrine of *laches*. Defendant Graham testified that plaintiff Roger Dwyer at the time of the agreement's execution expressed concern regarding the legality of the open-ended lease agreement. Thus, defendant had some notice that plaintiffs might later assert the right on which this suit was based. (*Bonner v. Westbound Records, Inc.* (1977), 49 Ill. App. 3d 543, 552, 364 N.E.2d 570, 576.) There was also some evidence that one of the defendants told plaintiffs not to worry about the enforceability of the lease agreement because they would either buy or get out of the business within five years after the execution of the agreement. Under these circumstances, the trial court could have found that plaintiffs' assertion of their right six years later was not unreasonable. We, therefore, are unable to conclude that the trial court abused its discre-

tion in this regard.

Defendant's estoppel defense is based on the assumption that the lease agreement was part of plaintiffs' consideration for the allegedly premium purchase price paid for the equipment. Defendant essentially argues that the contract is not severable and that plaintiffs' acceptance of the benefits of the contract now estops them from denying its enforceability. The doctrine of equitable estoppel may be invoked only in cases where the words or conduct of the party against whom the estoppel is alleged amounts to a misrepresentation or concealment of a material fact. (*Willowbrook Development Corp. v. Pollution Control Board* (1981), 92 Ill. App. 3d 1074, 416 N.E.2d 385; *Denton Enterprises, Inc. v. Illinois State Toll Highway Authority* (1979), 77 Ill. App. 3d 495, 396 N.E.2d 34.) The party claiming the benefit of estoppel "must have relied upon the actions or representations of the other and must have had no knowledge or convenient means of knowing the true facts." *Levin v. Civil Service Com.* (1972), 52 Ill. 2d 516, 524, 288 N.E.2d 97, 102; *Denton Enterprises, Inc. v. Illinois State Toll Highway Authority*.

◼ Both of these elements are lacking in the present case. Defendant Graham testified at trial that he was aware of plaintiffs' doubt as to the enforceability of the lease agreement. Accordingly, he has failed to demonstrate that plaintiffs concealed or misrepresented any facts. Further, it is clear that defendant's claim of estoppel is based upon his reliance upon the legality of the lease agreement. This is a pure question of law, and a mistake of law is not a basis for application of equitable estoppel. (*Denton Enterprises, Inc. v. Illinois State Toll Highway Authority* (1979), 77 Ill. App. 3d 495, 503-04, 396 N.E.2d 34.) Thus, defendant's assertion that plaintiffs were estopped to deny the enforceability of the lease agreement is without merit. The trial court properly refused to apply the doctrine in the present case.

Defendant Graham's final contention is that he was improperly denied his right to a trial by jury. Section 57.1(4) of the Civil Practice Act governs a party's right to a trial by jury in declaratory judgment proceedings. (Ill. Rev. Stat. 1979, ch. 110, par. 57.1(4).) That section provides:

> "If a proceeding under this section involves the determination of issues of fact triable by a jury, they shall be tried and determined in the same manner as issues of fact are tried and determined in other civil actions in the court in which the proceeding is pending."

The Illinois Constitution guarantees the right to trial by jury as it ex-

isted in common law actions when the constitution was adopted. (Ill. Const. 1870, art. II, sec. 5.) " 'When a declaration alone is sought, and no further relief is requested, the right to a trial by jury must be determined by an examination of the disputed issues and an appraisal of their predominant characteristics as indicating the appropriateness of legal or equitable relief.' " *Berk v. County of Will* (1966), 34 Ill. 2d 588, 591, 218 N.E.2d 98, 101, quoting *Lazarus v. Village of Northbrook* (1964), 31 Ill. 2d 146, 148, 199 N.E.2d 797, 799.

In the present case, plaintiffs requested only a declaration of their rights under the lease agreement. The rules of contract construction are applicable to the construction of written leases. (*Hoffman v. Clark Street Roadhouse, Ltd.* (1979), 79 Ill. App. 3d 41, 398 N.E.2d 238.) Generally, the interpretation of a contract is a matter of law for the trial court to decide. (*Interway, Inc. v. Alagna* (1980), 85 Ill. App. 3d 1094, 407 N.E.2d 615.) The determinative factor in construing an agreement is the intentions of the parties, and when the terms of the contract are plain the instrument itself is the only source of the parties' intent. (*Interway, Inc.*) Where, however, the meaning of a writing is uncertain or ambiguous and extrinsic evidence is introduced in aid of its interpretation, the question of its meaning should be left to the jury. If, however, after taking the extrinsic evidence into account, reasonable men could reach only one conclusion, the issues should be decided by the trial court as are other questions of fact under these circumstances. (*Borg-Warner Corp. v. Anchor Coupling Co.* (1958), 16 Ill. 2d 234, 156 N.E.2d 513; *Interway, Inc.*) The initial determination of whether a contract is ambiguous is a question of law for the trial court. *Chicago Investment Corp. v. Dolins* (1981), 93 Ill. App. 3d 971, 418 N.E.2d 59.

■ The trial court here determined that the contract was ambiguous. This determination has not been challenged by the parties on appeal. Upon reviewing the extrinsic evidence, it is apparent that there is a triable issue of fact which defendant was entitled to have submitted to a jury.

■ We believe that reasonable men could differ on the question of whether the parties intended the lease to be of indefinite, or at least lifetime, duration. We do not consider, as the trial court apparently did, that a lease of perpetual or indefinite duration is necessarily void for uncertainty. (See *Stanmeyer v. Davis* (1944), 321 Ill. App. 227, 53 N.E.2d 22; *Green v. Dietrich* (1885), 114 Ill. 636, 3 N.E. 800.) In our view, such a lease is enforceable if properly entered into and intended by the parties. (*Illinois Central R.R. Co. v. Michigan Central R.R. Co.* (1958), 18 Ill. App. 2d 462, 489, 152 N.E.2d 627, 640;

*Davis v. Nokomis Quarry, Inc.* (1979), 77 Ill. App. 3d 1011, 397 N.E.2d 216.) In the present case, the defendant claimed the lease gave him lifetime use of the cement plant which could be terminated either if he stopped business or if he stopped paying rent. The contract itself provided that the lease should continue "for as long as [lessee] desires." These words certainly add credence to defendant's position since it seems unlikely these words would have been used if the parties contemplated the contract could be terminated by the lessor at any time. Further, defendant Graham testified that he advised plaintiffs prior to signing the agreement that he did not want a lease which would remain in effect for only several years. Given the nature of the business involved, this viewpoint is understandable. We are hard pressed to conceive of the benefit of cement trucks and other specialized equipment without the corresponding benefit of a cement plant. However, there was also evidence in the record that plaintiffs entered into the lease agreement with an understanding that within several years defendants would purchase the cement plant. If this evidence is believed, then it is doubtful that plaintiffs intended the lease to be of indefinite or even lifetime duration. Because of the conflict in the evidence with respect to the intentions of the parties as to the lease's duration, we believe defendant Graham was entitled to have this question submitted to a jury.

■■ Although the parties have disputed the severability of the contract we do not believe that a triable issue of fact exists as to this issue. The question of whether a contract is severable depends upon the intention of the parties. (*Kaplan v. Keith* (1978), 60 Ill. App. 3d 804, 377 N.E.2d 279.) Factors aiding in the finding of the intention of the parties are whether performance by one party consists of distinct and separate items and whether the price paid by the other party is apportioned to each item being performed. (*Kaplan.*) After reviewing the extrinsic evidence in this case, we conclude that there is no evidence to support defendant Graham's claim that the lease agreement was actually part of plaintiffs' consideration for the purchase price of the equipment. Both plaintiff Andrew Dwyer and defendant Tresemer testified that the purchase price did not include the use of the cement plant facilities and that the only consideration for the plant was the one dollar per yard rental payment referred to in the contract. Further the record indicates, by way of a rejected offer of proof, only that defendant Graham believed the value of the trucks at the time of the agreement was approximately $3,000 and that he believed the remaining $10,000 of the purchase price was for the lease. However, these beliefs were not communicated to the plaintiffs, nor were they

reflected in the agreement itself. Thus, no evidence of a meeting of the minds on this point was presented by defendant. The contract clearly provided for the performance of separate agreements at a price apportioned to each agreement. (*Kaplan.*) Accordingly, the issue of severability was properly decided by the trial court and was not a triable issue of fact for the jury.

Consistent with this view, we find that defendant's offers of proof attempting to show that the value of the equipment was substantially less than the original purchase price of $13,000 were properly excluded as irrelevant. As previously stated, without some showing that these values were discussed with the plaintiffs prior to reaching their agreement the evidence has no bearing on a meeting of the minds between the parties.

■■ ■ Finally, we are compelled to comment upon the plaintiffs' claim at trial that the lease agreement was void for lack of mutuality of obligation. Under the agreement, each party assumed obligations which were detrimental to them and could be enforced by the other party. Plaintiffs agreed that defendants could use the cement plant facility for as long as they paid the agreed rental of one dollar per yard of concrete delivered. In addition to the rental payments promised by defendants, there exists in the agreement an implied covenant to use good faith efforts to develop the concrete business. (*Allied Delivery System, Inc. v. Illinois Commerce Com.* (1981), 93 Ill. App. 3d 656, 417 N.E.2d 777; *Davis v. Nokomis Quarry, Inc.* (1979), 77 Ill. App. 3d 1011, 397 N.E.2d 216; *Daughetee v. Ohio Oil Co.* (1914), 263 Ill. 518, 105 N.E. 308.) Thus, if either of these covenants were breached by the defendants the plaintiffs would have been entitled to recover damages under the contract. "A contract does not lack mutuality merely because its obligations appear unequal or because every obligation or right is not met by an equivalent counter obligation or right in the other party." (*Cox v. Grant* (1978), 57 Ill. App. 3d 922, 926, 373 N.E.2d 820, 823.) The mutuality requirement is satisfied if each party has given sufficient consideration for the other's promise. (*Cox v. Grant.*) Although theoretically defendant had the power to reduce rental payments by decreasing the quantity of concrete delivered, this fact alone would not destroy mutuality since such an action would be detrimental to defendant's business. (*Lincolnland Properties, Inc. v. Butterworth Apartments* (1978), 65 Ill. App. 3d 907, 913, 382 N.E.2d 1250, 1255.) We conclude that mutuality of consideration existed in the instant case, and that the mutuality requirement was not defeated by the mere fact that the contract was terminable solely at the will of only one of the parties. (*Cf. Gardiakos v. Vanguard Communications,*

*Inc.* (1976), 38 Ill. App. 3d 937, 350 N.E.2d 210; *Kraftco Corp. v. Koblus* (1971), 1 Ill. App. 3d 635, 274 N.E.2d 153; *Joliet Bottling Co. v. Joliet Citizens' Brewing Co.* (1912), 254 Ill. 215, 98 N.E. 263.) Further, even assuming the mutuality requirement was not satisfied at the contract's inception, it is a well settled rule of law that want of mutuality of obligation is no defense where the contract is executed or where, as here, a party who was not bound to perform does perform. *Walter E. Heller & Co. v. Convalescent Home* (1977), 49 Ill. App. 3d 213, 365 N.E.2d 1285.

Since a significant factual question exists as to the intention of the parties with respect to the duration of the lease agreement, the trial court improperly denied defendant's request for a jury trial. This cause is therefore reversed and remanded for a new trial on this issue. Plaintiffs' motion to dismiss the appeal is denied.

Reversed and remanded.

UNVERZAGT and VAN DEUSEN, JJ., concur.